Margie ZABORAC, Chester Jacobus, George Baylor, Harry Tarter, and State Bank of Cuba, Plaintiffs,

v.

AMERICAN CASUALTY COMPANY OF READING, PA., Defendant.

No. 86–1266.

United States District Court, C.D. Illinois, Peoria Division.

May 18, 1987.

Joseph W. Anthony, Fruth & Anthony, Fruth & Anthony, Minneapolis, Minn., and Ross E. Morris, Lewistown, Ill., for Zaborac, Jacobus, Baylor and Tarter.

Tom B. Ewing, Lewistown, Ill., for State Bank of Cuba.

Tim Swain, Swain, Hartshorn & Scott, Peoria, Ill., for FDIC.

Raymond Jast, Peterson, Ross, Schloerb & Seidel, Chicago, Ill., Arthur R. Kingery, Strodel, Kingery & Durree, Peoria, Ill., for American Cas. Co. of Reading, Pa.

## ORDER

MIHM, District Judge.

This case is a declaratory judgment action which seeks to resolve the rights and liabilities of the parties under a bank directors and officers liability insurance policy. The State Bank of Cuba and four directors of that Bank are the Plaintiffs in this declaratory judgment action against American Casualty, the insurance company which issued the directors and officers liability insurance policy which is in dispute in this litigation.

This case is presently before the Court upon the Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and, alternatively, Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

In February of 1986, a shareholder derivative suit, *Joseph Gibson, for the Use and Benefit of The State Bank of Cuba v. Wayne Grove, Linda Grove, Margie Zaborac, Chester Jacobus, George Baylor, and Henry Tarter* (Law No. 86–C–10), was filed in the Circuit Court of the Ninth Judicial District of Illinois, Fulton County. The plaintiff in *Gibson* alleges that the defendant directors failed to meet their responsibilities to the shareholders of the Bank and seeks damages in excess of $1,000,000. On July 31, 1986, the Plaintiffs in this lawsuit, the Bank and four of the director Defendants in *Gibson,* filed this suit in state court, and American Casualty removed the suit to federal court on the basis of diversity jurisdiction. The Plaintiffs are seeking a declaration that American Casualty is liable to the Plaintiffs for the following: all losses

which the Plaintiffs become obligated to pay in the *Gibson* action and any related claims; defense fees and expenses as they are incurred in the *Gibson* case; compensatory and punitive damages; and attorney fees and costs incurred in prosecuting this declaratory judgment action.

The Defendant casualty company responded with a Motion to Dismiss framed in the alternative under 12(b)(1) and 12(b)(6). As grounds for this Motion, the Defendant argues that the suit is premature and not ripe for adjudication in that no presently justiciable controversy exists.

In support of its Motion, American Casualty argues that the directors and officers liability insurance policy at issue differs from a general liability policy. A directors and officers liability insurance policy requires that the insurer indemnify its insured for losses incurred, with the definition of "loss" including defense costs. This is different from a general liability policy in which the insurer must indemnify the insured against liability and provide a defense for the insured.

According to American Casualty, any obligation of the insurance company under the policy accrues only at the conclusion of an underlying proceeding, at which time the amount of the "loss" can be determined. The obligations of the insurance company exist only insofar as coverage is ultimately determined to exist under the policy, based upon the findings of the Court in the underlying action. The underlying action in the present case is the *Gibson* lawsuit, which is still being litigated in state court. Therefore, until that case is finally resolved, the insurance company cannot determine whether coverage exists and the extent of the coverage it must provide under the terms of its liability policy. This is specifically stated in clause 7(c) of the policy, which is known as a non-action clause. That clause states that no action shall be taken against the insurer until the amount of the directors' or officers' obligation to pay shall have been finally determined either by judgment or by written agreement.

American Casualty adds that under the terms of the policy it does not have a duty to defend, even if it will ultimately have to pay the cost of the directors' defense in the *Gibson* lawsuit. However, under clause 5(c) of the policy, the insurer has the option, but not the duty, to advance defense costs, subject to the condition that the directors or officers must repay the insurer if it is finally established that the insurer has no liability under the policy. Pursuant to this reading of the policy, American Casualty concludes that the Plaintiffs have not presented a justiciable controversy nor stated a cause of action because they are not entitled to presently receive the defense costs they have incurred, and the extent of the insureds' loss has not yet been established in the underlying *Gibson* action.

In opposing the Motion to Dismiss, the Plaintiffs argue that this Court can consider the coverage issue at the present time by comparing the language of the insurance policy with the allegations made in the *Gibson* complaint. The Plaintiffs argue that American Casualty has already denied coverage based upon its reading of the *Gibson* complaint, and so it is disingenuous for American Casualty to now argue that the Court cannot make this same type of coverage determination in this lawsuit. In support of these contentions, the Plaintiffs have submitted an affidavit of the attorney for the Plaintiffs and correspondence among the State Bank of Cuba, American Casualty, and their attorneys, reflecting their relative positions regarding coverage under the directors and officers liability insurance policy issued by American Casualty to the Plaintiffs.

The Plaintiffs also argue that American Casualty has a present obligation to reimburse the Bank for the defense costs which the Bank has advanced to the directors and the officers in defending the *Gibson* lawsuit. As support for this position, the Plaintiffs rely upon the case of *Okada v. MGIC Indemnity Corp.*, 608 F.Supp. 383 (D.C. Hawaii 1985), *aff'd in relevant part*, 795 F.2d 1450 (9th Cir.1986). In *Okada*, the District Court of Hawaii found that a directors and officers liability policy which

included clauses similar to those involved in the present case created a duty to defend on the part of the insurance company. This resulted in the court finding that the insureds under the policy had a right to collect defense costs as they accrued during the course of litigation against the bank directors and officers.

The first matter for the Court to address is the issue, not raised by either of the parties, of whether the Court should take notice of the correspondence and affidavit attached to the Plaintiffs' Memorandum in Opposition to the Motion to Dismiss. In deciding a Rule 12(b) Motion to Dismiss, the Court should review the complaint in the light most favorable to the plaintiffs to see if the facts as alleged state a claim for relief under any possible theory. Rule 12(b) adds, however, that if a motion to dismiss for failure to state a claim raises matters outside the pleading that are not excluded by the Court, the Court should treat the motion as one for summary judgment under Rule 56, and the Court should give the parties reasonable opportunity to present all material pertinent to the summary judgment motion. As will become more clear in this opinion, the Court does not feel that the documents filed with the Court by the Plaintiffs are necessary or even helpful in determining the legal issues presented in this motion. Therefore, the Court will exclude these documents and not treat the motion as one for summary judgment.

Turning to the issue of whether American Casualty is liable for wrongful denial of coverage under its bank directors and officers liability insurance policy, the Court finds that the Defendant's description of the nature of the policy is essentially correct. The directors and officers liability insurance policy in the present case requires only that the insurer indemnify its insured for losses incurred, with the definition of loss including defense costs. This makes it different from a general liability policy, in which the insurer must defend an insured in addition to indemnifying him against liability. This difference was noted in the case of *Continental Casualty Company v. Board of Education of Charles County, Maryland,* 302 Md. 516, 489 A.2d 536 (1985).

The insurance policy at issue in the present case states that "subject to all of the terms, conditions and limitations of this policy, the insurer agrees to pay: all Loss which the Directors and Officers of any of them shall become legally obligated to pay." The policy then defines "loss" as "any amount which the Directors and Officers are legally obligated to pay ... for a claim or claims made against the Directors and Officers for Wrongful Acts and shall include but not be limited to damages, judgments, settlements, costs (exclusive of salaries of officers or employees), and defense of legal actions, claims or proceedings and appeals therefrom...." As these clauses of the policy indicate, the insurer's obligation is to pay the insured for covered "loss" which the insured incurs in connection with the claims made against it. Furthermore, the insurance company's obligations do not accrue until the loss suffered by the insured can be ultimately determined, which is at the time the underlying claims are adjudicated or settled. Because there has been no judgment or settlement in the *Gibson* case, any claimed "loss" by the Plaintiffs in this declaratory judgment action would be no more than speculation and guess work. The existence and extent of any loss for which American Casualty must pay cannot be ascertained until the liability, if any, of the directors is determined in *Gibson* and the insurance company can determine whether the facts adjudicated in *Gibson* support the application of the exclusion provisions of the insurance policy.

The Illinois courts have recognized the principle that an insurance company's duty to pay will not be defined until the adjudication of the underlying action, as stated in *Maryland Casualty v. Chicago and Northwestern Transportation Co.,* 126 Ill. App.3d 150, 466 N.E.2d 1091, 81 Ill.Dec. 289 (1st Dist.1984). In *Maryland Casualty,* the court upheld summary judgment in favor of Chicago and Northwestern on the issue that Maryland Casualty had a duty to defend under the terms of the comprehen-

sive general liability policy in effect. However, the court reversed the lower court's ruling that Maryland had a present duty to indemnify Chicago and Northwestern, stating, "A declaratory judgment action to determine an insurer's duty to indemnify its insured, brought prior to a determination of the insured's liability, is premature since the question to be determined is not then ripe for adjudication." *Id.* 446 N.E.2d at 1095–96, 81 Ill.Dec. at 293–94. *See also, Forty-Eight Insulations Inc. v. Johns-Manville Products Corporation,* 472 F.Supp. 385 (N.D.Ill.1979).

In addition, the insurance policy at issue contains a no action clause in clause 7(c). That clause reads:

"Action Against Insurer Clause—No action shall be taken against the Insurer unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy nor until the amount of the Directors' or Officers' obligation to pay shall have been finally determined either by judgment against the Directors or Officers after actual trial, or by written agreement of the Directors or Officers, the claimant and the insurer."

This clause explicitly proscribes an action against the insurance company until the insured's obligation to pay is determined by trial or settlement. Therefore, not only have the Plaintiffs brought this action before their liability was determined in the *Gibson* case, but this clause expressly prohibits them from bringing such an action until the underlying claims have been determined.

The Plaintiffs have argued that American Casualty has already indicated to them that it is denying coverage for them in the *Gibson* lawsuit. Therefore, this Court should also be able to make this same determination by comparing the language of the policy with the allegations of the *Gibson* complaint. This argument is misdirected, because American Casualty will not incur any obligations to the Bank or its directors until after the Plaintiffs' loss has been determined in the *Gibson* litigation. The Court is not concerned with American

Casualty's opinion that it is not obligated to indemnify the Plaintiffs for their future liability in the *Gibson* lawsuit, because American Casualty's obligations to the Plaintiffs (if any) will not become enforceable until after the *Gibson* litigation has been resolved. Thus, it remains a matter of speculation whether American Casualty's opinion of its coverage will change upon resolution of the *Gibson* lawsuit. Until that time, this Court cannot and will not attempt to resolve what is nothing more than dispute of opinions; until such time as a legally enforceable obligation exists, there is no case or controversy before the Court for it to decide.

It is also incorrect for the Plaintiffs to argue that there are some present obligations on the part of the insurance company which arise out of its insurance policy and must be evaluated in light of the allegations of the *Gibson* complaint. This argument of the Plaintiffs suggests that the insurance company has a duty to defend as well as to indemnify. This Court has already found from its reading of the liability insurance policy that the insurance company need only indemnify the insureds for losses, and the fact that the insurance company has agreed to reimburse the defense costs of the insureds does not create a duty to defend on the part of the insurance company.

When an insurance policy contains a duty to defend, there is a present obligation which may be breached by the insurer at the time the insured is sued. In such cases, the insurance company must determine at the beginning of the lawsuit whether the dispute involves potential coverage, in order to decide whether it must proceed with the defense of the insured. The present case, however, does not involve an obligation on the part of the insurance company to provide a defense for the insureds, so there is no need to determine coverage at the outset of the lawsuit from the allegations of the complaint. The insurance company's indemnification obligation must await resolution of the underlying lawsuit, so the present declaratory judgment action is premature.

Finally, the fact that the Plaintiff Bank has already paid some of the costs of the directors' defense in the *Gibson* lawsuit does not alter the outcome of this case. Clause 5(c) of the policy states:

"The insurer may at its option and upon request, advance on behalf of the Directors and Officers, or any of them, expenses which they have incurred in connection with claims made against them prior to disposition of such claims, provided always that in the event it is finally established the Insurer has no liability hereunder, such Directors and Officers agree to repay to the Insurer, upon demand, all monies advanced by virtue of this provision."

This clause gives American Casualty the option, but not the obligation, to advance defense costs as they are incurred.

The Bank has not suggested any specific circumstances which would make this clause inapplicable to them, and this Court believes this clause to be clear and unambiguous in its application to all of the Plaintiffs. Because American Casualty has the right but not the duty to advance defense costs, there is no present controversy to be adjudicated by this Court regarding American Casualty's refusal to pay such defense costs as they are incurred. *See, e.g., City of Peoria v. Underwriters at Lloyds London, Inc.*, 290 F.Supp. 890 (S.D.Ill.1968) (court held that a provision similar to clause 5(c) allowed the insurers to take over the conduct of the defense of any claim, but did not obligate them to assume the conduct of the defense of the lawsuit).

This decision by the court is contrary to that reached by the district court in Hawaii and the Ninth Circuit in *Okada v. MGIC Indemnity Corp.*, 795 F.2d 1450 (9th Cir. 1986). In *Okada*, the district court found an inconsistency between the provisions of the insurance policy which obligate the insurance company to pay losses, including defense costs, and that which gives the insurance company the option of advancing expenses to the insureds. Because of these inconsistencies, the court construed the insurance contract against the insurance company and found that the insurance company had a duty to defend. This duty also obligated the insurance company to pay insurance defense costs as they became due. The district court added that the no action clause did not apply because it barred only those actions against the insurer by third parties before a final judgment or settlement. The Ninth Circuit generally upheld this reasoning of the district court, stating, "Clause 5(a)[1] establishes the policy as a duty-to-defend policy, and the district court correctly found that clause 5(c)[2] was ambiguous in its attempt to contract out of paying defense costs of potentially covered claims as they came due." 795 F.2d at 1455.

This Court finds the reasoning of dissenting Judge Hall in *Okada*, 795 F.2d 1450, 1457 (9th Cir.1986), more persuasive than the majority opinion. Judge Hall explained that the majority incorrectly read into the contract a duty to defend on the part of the insurer, relying upon cases which involved the issue of an insurance company's duty to defend. However, Judge Hall was of the opinion that the directors and officers insurance policy in dispute did not contain a contractual duty to defend, and she disagreed with the majority's conclusion that Hawaii law would imply a duty to defend in all insurance policies unless such duty was expressly negated in the policy. The Court believes that this is the correct interpretation of the policy under the current status of Illinois insurance law. Because there is no duty to defend in the directors and

---

**1.** 5(a). No costs, charges and expenses shall be incurred or settlements made without the Insurer's consent which consent shall not be unreasonably withheld; however, in the event such consent is given, the Insurer shall pay, subject to the provisions of Clause 4, such costs, settlements, charges and expenses.

**2.** 5(c). The Insurer may at its option and upon request, advance on behalf of the Directors or Officers, or any of them, expenses which they have incurred in connection with claims made against them, prior to disposition of such claims, provided always that in the event it is finally established the Insurer has no liability hereunder, such Directors and Officers agree to repay to the Insurer, upon demand, all monies advanced by virtue of this provision.

officers insurance policy, there is no current obligation on the part of the insurance company to reimburse either the individual Plaintiffs or the Bank for defense costs incurred in the *Gibson* lawsuit.

The Court finds that because American Casualty does not have any current obligations or duties toward the Plaintiffs, the Plaintiffs have failed to allege facts which indicate the existence of a case or controversy as required by Article 3 of the United States Constitution. The Court orders that this case is DISMISSED.