AMERICAN CASUALTY CO. OF READ-
ING, PENNSYLVANIA, Plaintiff,

v.

BANK OF MONTANA SYSTEM, Stephen
Adams, Lloyd A. Amundson, Alfred T.
Burke, Thomas R. Zorr, Joseph Friend,
C. Robert Paciotti and Ester M. De-
vault, Defendants,

v.

CNA FINANCIAL CORPORATION,
Counterclaim Defendant.

Civ. No. 4–87–48.

United States District Court,
D. Minnesota,
Fourth Division.

Dec. 10, 1987.

Charles E. Spevacek, John J. McDonald, Jr., Meagher, Geer, Markham, Anderson, Adamson, Flaskamp, Brennan, Minneapolis, Minn., for plaintiff.

Timothy D. Kelly, Stephen P. Kelley, Mackall, Crounse & Moore, Minneapolis, Minn., for defendants.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on plaintiff's and defendants' cross-motions for summary judgment, plaintiff's motion to dismiss defendants' counterclaims and plaintiff's appeal from an order of the United States Magistrate. Plaintiff's motion for summary judgment will be denied and its motion to dismiss defendants' counterclaims will be denied. Its appeal from the Magistrate's order will be dismissed as moot. Defendants' motion for summary judgment will be granted.

## FACTS

This is a contractual dispute involving the interpretation of the fine print in a directors and officers liability insurance policy (D & O policy) issued by plaintiff American Casualty Co. (American) to defendants Bank of Montana System (BMS) and its directors and officers. The coverage of the policy has been called into question as a result of a shareholders' derivative suit filed against BMS and its directors and officers which is currently pending before the Court: *Walter v. Bank of Montana System*, CIVIL 4–86–412. American has brought a motion for a declaration that under the terms of the policy it is not obligated to reimburse BMS for the legal fees incurred in the *Walter* litigation which BMS advanced to its directors and officers. American is a Pennsylvania corporation organized with its principal place of business in Pennsylvania. BMS is a Montana multibank holding corporation with its principal place of business in Montana. The individual directors and officers are either Minnesota or Montana residents. CNA Financial Corporation (CNA) is a corporation which operates in part as a holding company for wholly-owned insurance corporations that issue insurance. It is the parent corporation of plaintiff American.[1] Jurisdiction exists under the diversity provisions of 28 U.S.C. § 1332. Plaintiff requests declaratory relief pursuant to 28 U.S.C. § 2201.

In February 1985 American issued a D & O policy to BMS which provided insurance coverage for specified losses arising from claims against the directors and officers of BMS. In April of 1985 BMS notified its shareholders via proxy statement of its intention to go private by means of a 125 to 1 reverse stock split. On May 31, 1985 the BMS shareholders approved the reverse stock split by a vote of 97 percent for, 2.1 percent against and .9 percent abstaining. On May 16, 1986 the dissenting shareholders commenced the derivative suit currently pending before the Court against defendants alleging the reverse split was fraudulent and unfair. BMS had received notice of the suit prior to this time and notified American of the potential claim on March 6, 1986. Affidavit of Philip Walker at 2, par. 3. On March 28, 1986 American had notified the president of BMS that pursuant to the terms of the D & O policy it was not required and did not intend to undertake the defense of any of BMS' directors and officers who were defendants in the derivative suit. Walker Aff. at 2, par. 3.

Pursuant to its bylaws BMS has advanced to defendant directors and officers the legal fees incurred by them in defending against the *Walter* derivative suit. On November 13, 1986 defendants' counsel made demand on American for payment of those fees pursuant to the terms of the D & O policy. American refused, asserting that under the terms of the policy it was under no obligation to advance legal fees prior to the final disposition or settlement of the action. American subsequently filed this action for a declaration that under the policy it did not have to advance legal fees to defendants. Defendants have filed a

1. CNA is not involved in any of the current motions before the Court.

counterclaim alleging breach of contract, bad faith, and unfair insurance practices. Resolution of this dispute requires the Court to construe the language of the D & O policy and applicable law.

## DISCUSSION

### I. *American's Motion for Declaratory Relief*

#### A. *Applicable Law*

As a threshold matter the Court must first decide whether Minnesota or Montana law applies in construing the language in the D & O policy. A federal court sitting in diversity must apply the choice of law provisions of the forum state in which it sits to determine the substantive law to be applied in the case before it. *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). However, before resorting to a choice of law analysis, the Court must first determine that a conflict exists. *Surgidev Corp. v. Eye Technology, Inc.,* 648 F.Supp. 661, 679 (D.Minn.1986), *aff'd,* 828 F.2d 452 (8th Cir.1987). Here both Minnesota and Montana have identical rules of construction with respect to insurance policies. In each state ambiguities in an insurance policy must be construed strictly against the insurer and in favor of the insured. *Nordby v. Atlantic Mutual Insurance Co.,* 329 N.W.2d 820, 822 (Minn. 1983); *Bauer Ranch v. Mountain W. Farm Bureau Mutual Insurance,* 695 P.2d 1307, 1309 (Mont.1985). Language is deemed ambiguous when it is susceptible to conflicting reasonable interpretations. *Columbia Heights Motors Inc. v. Allstate Insurance Co.,* 275 N.W.2d 32, 34 (Minn. 1979); *Bauer,* 695 P.2d at 1309. In determining whether particular language is ambiguous the words are to be interpreted in their ordinary sense as understood by a reasonable person standing in the insured's shoes. *Farmers Home Mutual Insurance Co. v. Lill,* 332 N.W.2d 635, 638 (Minn. 1983); *Bauer,* 695 P.2d at 1309. Accordingly, the Court will apply these principles in construing the contract.

#### B. *The Policy Language*

The parties' dispute concerns the meaning of three key provisions of the policy. The first concerns paragraph (b) of the scope section which provides in relevant part that "subject to the terms, conditions, and limitations of [the] policy" American agrees:

> (b) With the Bank that if ... any claim or claims are made against the Directors and Officers, individually or collectively, for a Wrongful Act, *the Insurer will pay, in accordance with the terms of this policy,* on behalf of the Bank, *all Loss ... which the Bank has, to the extent permitted by law, indemnified the Directors and Officers.*

Policy at 2, par. (b) (emphasis added).

The policy defines "loss," the second disputed provision, as:

> *any amount* which the Directors and Officers are legally obligated to pay or *for which the Bank has, to the extent permitted by law, indemnified the Directors and Officers,* for a claim or claims made against the Directors and Officers for Wrongful Acts *and shall include but not be limited to* damages, judgments, settlements, costs (exclusive of salaries of officers or employees), and *defense of legal actions,* claims or proceedings and appeals therefrom....

Policy at 1, par. 1(d) (emphasis added).

"Wrongful act" is defined as:

> any actual or alleged error, misstatement, misleading statement, act or omission, or neglect or breach of duty by the Directors or Officers in the discharge of their duty solely in their capacity as Directors or Officers of the Bank....

Policy at 1, par. 1(e).

Finally, the third key disputed section entitled "Costs, Charges and Expenses" provides:

> (a) No costs, charges and expenses shall be incurred or settlements made without the Insurer's consent which consent shall not be unreasonably withheld: however, in the event such consent is given, the Insurer shall pay, subject to the provisions of Clause 4, such costs, settlements, charges and expenses.
>
> ....

(c) The Insurer may at its option and upon request, advance on behalf of the Directors or Officers, or any of them, expenses which they have incurred in connection with claims made against them, prior to disposition of such claims, provided always that in the event it is finally established the Insurer has no liability hereunder, such Directors and Officers agree to repay to the Insurer, upon demand, all monies advanced by virtue of this provision.

Policy at 3, par. 5(a), (c).

The policy also contains five exclusions, two of which are relevant to this dispute. Under the policy American is not liable for loss in connection with any claim against the directors and officers:

(2) based upon or attributable to their gaining in fact of any personal profit or advantage to which they were not legally entitled;

. . . .

(5) brought about or contributed to by the dishonesty of the Directors or Officers. However, notwithstanding the foregoing, the Directors or Officers shall be protected under the terms of this policy as to any claims upon which suit may be brought against them, by reason of any alleged dishonesty on the part of the Directors or Officers, unless a judgment or other final adjudication thereof adverse to the Directors or Officers shall establish that acts of active and deliberate dishonesty committed by the Directors or Officers with actual dishonest purpose and intent were material to the cause of action so adjudicated.

Policy Par. 3(a)(2), (5).

It is undisputed that BMS has advanced to the defendant directors and officers the legal fees that they have incurred to date in defending the derivative suit. Simply put, BMS argues that it is entitled to reimbursement from American because:

1. The derivative suit concerns claims against BMS' directors and officers alleging wrongful acts, as defined by the policy.

2. BMS is permitted by law to advance the legal fees of its directors and officers in the derivative suit and it did so.

3. Defense of legal actions falls within the policy's definition of loss; and therefore

4. American must reimburse BMS because BMS has incurred a loss, within the meaning of the policy.

American argues that this is an incomplete analysis and relies on extensive case law supporting its view that section 5(c) of the policy explicitly gives it complete discretion on whether or not to advance legal fees.

## C. *The Case Law*

Courts which have reviewed D & O policies with identical or similar language are divided on whether or not the policy is ambiguous as to whether the insurer has a duty to advance legal fees prior to final disposition of the action. Defendants rely principally on two decisions which construed identical policies and concluded the insurer did have such a duty. *Okada v. MGIC Indemnity Corp.*, 823 F.2d 276 (9th Cir.1987) and *Little v. MGIC Indemnity Corp.*, 649 F.Supp. 1460 (W.D.Pa.1986). In *Okada* the United States Court of Appeals for the Ninth Circuit first decided that an identical D & O policy was a liability as opposed to an indemnity policy. 823 F.2d at 280. Accordingly, the court decided that the insurer had a duty to pay loss on an "as incurred basis" rather than at the time the directors' obligation to pay damages became fixed. 823 F.2d at 280. The *Okada* court therefore concluded that since section 1(d) of the policy defined loss to include the costs of defense of legal actions under that section alone the insurer's duty to pay those costs was not conditioned on the payment of damages by the directors. 823 F.2d at 280. This, the court reasoned, ensured that the directors did not need to expend their own funds to receive protection under the policy. 823 F.2d at 280. The court also concluded that section 5(a) which provided that "[n]o costs, charges and expenses shall be incurred or settlements made without the Insurer's consent which consent shall not be unreasonably

withheld," 823 F.2d at 279, qualified the duty to pay loss contemporaneously by giving the insurer the right of approval over those items subject to a reasonableness limitation. 823 F.2d at 280.

The *Okada* court next considered whether the language in section 5(c) which gave the insurer discretion on whether to pay "expenses" modified the contemporaneous obligation to pay defense costs under section 1(d) and section 5(a). The court concluded section 5(c) did not change the insurer's obligation under sections 1(d) and 5(a) given the fact that all ambiguities had to be resolved in favor of the insured and that the court had to be mindful of the reasonable expectations of the parties:

> [T]he contract cannot be read to exclude defense costs from the effect of the general rule of a liability policy. Given the prosecution of this suit, [the insurer] clearly intended to exclude attorneys fees from immediate payment. At the time critical to our inquiry, however, the time of contracting, it could not have been clear to insureds that they would not be protected from the costs of fees. Section 1(d) provides the coverage in clear language; section 5(c) (we *now* know) attempts to postpone that coverage pending determination of liability on the underlying claims. The language of section 5(c) is simply unclear in its attempt. Nowhere are "expenses" defined; nor is it explained how they differ from the broader category of "costs, charges, and expenses" of section 5(a). As one court recently noted in following our previous discussion of this policy, "the large print giveth and the small print taketh away." *Little v. MGIC In-*

*dem. Corp.*, 649 F.Supp. 1460, 1465 (W.D.Pa.1986).

823 F.2d at 281. The court therefore found the policy ambiguous and ruled in favor of the directors.[2]

The decision in *Little v. MGIC Indemnity Corp.*, 649 F.Supp. 1460 (W.D.Pa.1986) similarly focused on the language in sections 1(d), 5(a) and 5(c). It concluded that section 5(a) created a duty to pay all reasonable costs, charges and expenses contemporaneously. 649 F.Supp. at 1465. Like the *Okada* court, the *Little* court also concluded that it was impossible to determine how "costs, charges, and expenses" in 5(a) differed from "expenses" in 5(c). 649 F.Supp. at 1465. Accordingly, the court concluded that "[s]ubsection 5(C) creates confusion by seeming to absolve the insurer from its duty to pay reasonable defense costs contained in Subsection 5(A)." 649 F.Supp. at 1465. The court also noted the existence of a second ambiguity because of language in section 3(A)(5) of the policy. That section provided that the insurer agreed to protect the defendants against " 'any claims' grounded in any 'alleged dishonesty,' unless there is a final adjudication that 'active and deliberate dishonesty committed by the Directors or Officers with actual dishonest purpose and intent were material to the cause of action so adjudicated.' " 649 F.Supp. at 1465. The court construed this clause as requiring immediate reimbursement of defense costs and concluded this clause also conflicted with section 5(c). Accordingly, the court resolved the uncertainties in timing and reimbursement in favor of the insureds and held the insurer had to advance legal fees.

---

2. The *Okada* decision was initially decided by a three-judge panel, reported at 795 F.2d 1450 (9th Cir.1986). Two members of the panel construed the D & O policy as imposing a duty to defend on the insurer under Hawaiian law. Accordingly, they concluded that this required the insurer to immediately reimburse defense costs as they came due. 795 F.2d at 1453–54. One judge dissented arguing that the majority erred in so construing the policy because no language in the policy created a duty to defend. 795 F.2d at 1458 (Hall, J., dissenting).

The two-judge majority subsequently vacated their earlier decision and in their subsequent opinion reported at 823 F.2d 276 retreated from their earlier conclusion that the policy imposed a duty to defend under Hawaiian law. Instead, they based their decision that the insurer had a duty to advance legal fees solely on the language of the policy which they concluded was ambiguous. The dissenting judge from the previous decision joined the other two judges in finding that the policy language itself was ambiguous. The insurer subsequently appealed the new decision to the entire Ninth Circuit en banc which recently declined to reconsider the matter.

Defendants urge the Court to rely on the reasoning of the *Okada* and *Little* decisions[3] and hold that because the policy is ambiguous American must be deemed to have an obligation to advance legal fees. Plaintiff requests that the Court follow those opinions, largely unreported, which have concluded that section 5(c) of the policy is unambiguous and gives the insurer complete discretion as to whether or not to advance defense costs. The leading reported case is *Zaborac v. American Casualty Co.*, 663 F.Supp. 330 (C.D.Ill.1987) also involving a policy with language identical to the one at bar.

In *Zaborac* the court concluded, unlike *Okada*, that the D & O policy differed from general liability policy. It noted that general liability policies involve both a duty to indemnify and a duty to defend; the duty to defend imposed an obligation on the insurer to determine potential coverage at the outset of the dispute to decide whether to provide a defense. 663 F.2d at 332. In contrast, the court found that indemnity policies in general and the D & O policy before it in particular required only that the insurer indemnify the insureds without any duty to defend thus permitting the insurer to wait until resolution of the dispute to determine whether coverage existed. 663 F.Supp. at 333. In emphasizing this distinction the court focused on the no action clause in section 7(c) of the policy, which provided that no action could be taken against the insurer unless the director's or officer's obligation to pay was finally determined by judgment or by written agreement between the insurer and the insureds. The court concluded this clause prevented the insureds from bringing any action under the policy until liability on the underlying claims had been resolved. 663 F.Supp. at 333. The court further noted that this interpretation was buttressed by section 5(c) which it found unambiguously gave the insurer "the option but not the

obligation to advance defense costs as they are incurred." 663 F.Supp. 334.

Other courts construing similar or identical policies have reached the same conclusion as *Zaborac*. *See American Casualty Co. v. Federal Deposit Insurance Corp.*, 677 F.Supp. 600, 606 (N.D.Iowa 1987) (policy contained no duty to defend and hence no duty to advance legal fees); *Enzweiler v. Fidelity & Deposit Co.*, No. 85–99 (E.D.Ky. May 13, 1986) [Available on WESTLAW, 1986 WL 20444] (policy terms permitted insurer to await resolution of underlying action against insured before making payments); *Bank of Commerce and Trust Co. v. National Union Fire Insurance Co.*, 651 F.Supp. 474, 476 (N.D.Okla.1986) (where factual issues existed about whether claims would be excluded from coverage insurer had no duty to advance legal fees); *Clandening v. MGIC Indemnity Corp.*, No. 83–2432–LTL, slip op. at 7, 8 (C.D.Ca.1983) (policy imposed no duty to advance legal fees); *Maryland Deposit Insurance Fund v. American Casualty*, No. 11705, slip op. at 8–9 (Md.Cir.Ct. July 8, 1986) (insurer had complete discretion as to whether or not to make advances). "Thus we have one of those legal ironies which occasionally occur —the courts are split on whether or not certain language is ambiguous." *Little*, 649 F.Supp. at 1464.

The Court finds, after careful consideration, that the reasoning in the *Okada* and *Little* decisions is persuasive and thus concludes that the terms of the D & O policy are ambiguous. Simply put, American has failed to explain how "costs, charges and expenses" in paragraph 5(a) differ from "expenses" in paragraph 5(c). If defense costs are subsumed under the rubric of either costs or charges, then obviously they fall outside the scope of the discretionary proviso in paragraph 5(c). It follows that if American does not have the discretion on

---

3. Defendants also seek to rely on *Pepsico, Inc. v. Continental Casualty Co.*, 640 F.Supp. 656 (S.D. N.Y.1986) which also held that the terms of a similar D & O policy required the insurer to advance defense fees based on the policy's definition of loss. The case is distinguishable, however, because the policy did not contain a provi-

sion making advance of expenses discretionary with the insurer. This distinction was explicitly noted by the same judge who decided *Pepsico* in the later case of *Board of Education v. CNA Insurance Co.*, 647 F.Supp. 1495, 1507 (S.D.N.Y. 1986).

whether to advance defense costs then it must advance them on an as-incurred basis.

The fact that this language is ambiguous is underscored by the fact that in light of the *Okada* decisions, some insurers have revised their policies to remove the ambiguity. Washington, *Directors' and Officers' Liability Insurance: Coverage Disputes (Coverage Disputes)*, in *Liability Insurance 1987* (Practicing Law Institute), 379, 404 (1987). For example, one such revised policy provided:

> It shall be the duty of the Directors and Officers and not the duty of the Underwriters to defend Claims made against the Directors and Officers, provided that no Costs, Charges or Expenses shall be incurred without Underwriters' consent, such consent not to be unreasonably withheld. In the event of such consent being given, and subject to all other terms and provisions of the Policy ... *Underwriters shall reimburse Costs, Charges and Expenses only upon the final disposition of any Claim made against the Directors and Officers.*

Washington, *Coverage Disputes* at 494–95 (emphasis added). It is apparent that insurance companies have no trouble making the policy language clear if they wish to do so.

Because the Court finds American has a duty to advance defense costs, American's motion for summary judgment will be denied.

## II. *Defendants' Counterclaims*

Defendants have filed counterclaims against American and its parent insurer CNA Financial Corporation for (1) breach of contract; (2) bad faith conduct; and (3) unfair insurance practices under the Montana Unfair Trade Practices Act, Mont. Code Ann. 33–18–101, *et seq.* In particular, defendants allege American and CNA

a. refused to pay BMS under insuring clause (b) for the defense fees it had advanced to its directors and officers.

b. refusing to admit or deny coverage without a factual basis for a denial of coverage.

c. cited spurious grounds for refusal to admit coverage.

d. engaged in unreasonable delay in responding to the notice of claim and demands for reimbursement.

e. failed to perform a reasonable factual investigation before asserting purported grounds for denying coverage.

*See* Answer and Counterclaim par. 22–53. Defendants move for summary judgment on the breach of contract claim. American moves to dismiss the counterclaims for failure to state a claim for which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6).

## A. *Choice of Law*

As a threshold matter the Court must determine whether Minnesota or Montana law governs the conduct of American. As noted above, before resorting to a conflict of law analysis the Court must first determine that a conflict between the substantive law of the two forums in fact exists. *Surgidev Corp. v. Eye Technology, Inc.*, 648 F.Supp. 661, 679 (D.Minn.1986), *aff'd*, 828 F.2d 452 (8th Cir.1987). Here an outcome determinative conflict exists because Minnesota neither permits a private cause of action under its Unfair Insurance Practices Act, Minn.Stat. §§ 72A.19, 72A.20 nor permits a bad faith tort action to be brought against an insurer for breach of an insurance policy whereas Montana law is precisely the opposite. *Compare Morris v. American Mutual Insurance Co.*, 386 N.W.2d 233, 236 (Minn.1986) (no private cause of action under Minnesota Unfair Insurance Practices Act) and *Morris v. American Employers Mutual Casualty Co. v. Kangas*, 310 Minn. 171, 245 N.W.2d 873, 875 (1976) (Minnesota does not recognize a bad faith action in tort for breach of contract by an insurance company) *with First Security Bank of Bozeman v. Goddard*, 181 Mont. 407, 593 P.2d 1040, 1047 (1979) (recognizing private cause of action for violation of Montana Unfair Trade Practices Act) and *Britton v. Farmers Insurance Group Truck Insurance Exchange*, 721 P.2d 303, 306 (Mont.1986) (Montana law permits insured to maintain tort action for bad faith conduct by an insurer).

■ Because a federal court sitting in diversity is bound to apply the choice of law principles of the forum state, *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941), the Court must apply the better law methodology adopted by the Minnesota Supreme Court in *Milkovich v. Saari*, 295 Minn. 155, 203 N.W.2d 408 (Minn.1973) in resolving the choice of law issue.[4] The *Milkovich* analysis involves evaluation of five factors: (1) expectation of the parties and predictability of results; (2) maintenance of interstate order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interest; and (5) application of the better rule of law. 203 N.W.2d at 412.

### 1. *Predictability of Results*

■ In this instance the predictability of results militates strongly in favor of applying Montana law. American argues that because the policy itself contains no choice of law provision the parties did not expect Montana law to govern their relationship. This argument simply ignores the fact that the policy is both regulated by and indeed incorporates Montana law. Defendants' counterclaims arise out of an insurance policy issued to a Montana corporation in Montana. *See* Affidavit of Thomas Zorr, par. 2. The policy itself had to be specifically approved and inspected by the Montana Commissioner of Insurance. Mont.Code Ann. § 33–1–501. Moreover, the policy itself implicitly incorporates Montana law. Thus, paragraph (b) of the policy which is at issue in this case provides that American must pay, in accordance with the policy terms, "all Loss ... for which the Bank has, *to the extent permitted by law*, indemnified the Directors and Officers." (Emphasis added.) As a Montana corporation the extent to which BMS can indemnify its directors and officers is controlled by the Montana Business Corporations Act, Mont.

Code Ann. § 35–1–414. It would be highly inefficient and unfair to expect the insured to have to relitigate the scope and terms of the policy based solely on the forum in which litigation over a Montana corporate transaction occurred. *See American Home Assurance Co. v. Libbey–Owens–Ford Co.*, 588 F.Supp. 764, 766 (D.Mass. 1984). Given the close connection the policy has with Montana and the language in the contract, the Court finds the parties intended Montana law to apply.

### 2. *Maintenance of Interstate and International Order*

This factor measures whether the state whose law is to apply has sufficient contacts with the facts in issue. *Hague v. Allstate Insurance Co.*, 289 N.W.2d 43, 48 (Minn.1979), *aff'd*, 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981). Clearly, Montana has a sufficient nexus with the underlying facts such that application of its law would neither be arbitrary nor fundamentally unfair.

### 3. *Simplification of the Judicial Task*

This factor is irrelevant because the Court can just as easily apply Montana as opposed to Minnesota law. *Hime v. State Farm Fire & Casualty Co.*, 284 N.W.2d 829, 833 (Minn.1979), *cert. denied*, 444 U.S. 1032, 100 S.Ct. 703, 62 L.Ed.2d 668 (1980).

### 4. *Advancement of the Forum's Governmental Interest*

Application of this factor requires analysis of not only Minnesota as the forum state but also the public policies of Montana as well. *Myers v. Government Employees Insurance Co.*, 302 Minn. 359, 225 N.W.2d 238, 242 (1974). In this case, Montana has a significant interest both in protecting the rights of its insured residents under policies issued in that state and in regulating the conduct of insurers who solicit the business of its residents. The inter-

---

4. The Court must initially determine whether or not it could apply Minnesota's law consonant with due process. Litigation in the *Walter* case occurred here and the demand for reimbursement was made upon American Casualty in Minnesota which is licensed to transact business

here. The Court finds these contacts are sufficiently significant to permit application of Minnesota law without offending due process. *See Allstate Insurance Co. v. Hague*, 449 U.S. 302, 313, 101 S.Ct. 633, 640, 66 L.Ed.2d 521 (1981).

est of Minnesota, the forum state, is "that Minnesota courts not be called upon to determine issues under rules, which, however accepted they may be in other states, are inconsistent with our own concept of fairness and equity." *Hime*, 284 N.W.2d at 833. Here that interest is less significant in the context of a dispute between an out-of-state insurer and a Montana corporation arising from a policy issued in Montana. *See Gate City Federal Savings & Loan v. O'Connor*, 410 N.W.2d 448, 451 (Minn.Ct.App.1987) (Minnesota had little interest in regulating contract dispute between nonresidents); *see also First National Bank v. White*, 420 F.Supp. 1331, 1335 (D.Minn.1976) (interest of Minnesota forum in resolving dispute between nonresidents was negligible). On the facts of this case the Court finds that applying Montana insurance law would not be contrary to Minnesota's concepts of "fairness and equity." *Hime*, 284 N.W.2d at 833.

### 5. *Better Rule of Law*

This factor is applied only when the other four factors do not clearly resolve the choice of law issue. *Myers*, 225 N.W.2d at 244. Thus, resort to this factor is not necessary in this case.

In sum, the Court concludes that Montana rather than Minnesota law should govern defendants' counterclaims.

### B. *Application of Montana Law*

#### 1. *Breach of Contract*

■ The Court concludes that because American has a present duty to advance defense costs, American has breached that duty by failing to do so. Accordingly, the Court will grant defendants' motion for summary judgment on the breach of contract claim.

#### 2. *Unfair Practices and Bad Faith Claims*

Section 33–18–201 of the Montana Unfair Practices Act prohibits insurers from adopting any of fourteen unfair claim settlement procedures as a general business practice. The purpose of that statute is to compel "an insurer to be prompt in handling the claim, to conduct a reasonable investigation, to deny coverage within a reasonable time, to offer a reasonable amount in settlement, and to effectuate a prompt, fair and equitable settlement once liability has become reasonably clear." *Fode v. Farmers Insurance Exchange*, 719 P.2d 414, 415 (Mont.1986).

Given the split in authority on whether American had a duty to advance defense costs the Court finds that American's failure to advance those costs was not prompted by bad faith. Moreover, based on careful review of the files the Court finds American did promptly and in good faith make a decision to reserve its decision about coverage and made a reasonable factual investigation of the facts underlying the *Walter* litigation. *See* Affidavit of John J. McDonald, Jr., Exhibit A, Letter to *Walter* Defendants and Counsel Dated January 27, 1987. Accordingly, the Court concludes defendants' allegations are simply not actionable under Mont.Code Ann. §§ 33–18–201(2), (3). The Court will therefore dismiss defendants' bad faith and unfair trade practices claims under Montana law.

### C. *Plaintiff's Appeal from Magistrate's Order*

■ American also appeals from the decision of the United States Magistrate denying its motion for a protective order thereby permitting defendants to conduct discovery on the bad faith and unfair trade practices claims under Montana law. Given the Court's disposition of those claims the issue is now moot and the Magistrate's order of no effect.

Based on the foregoing, and upon review of all the files, records, proceedings and arguments of counsel,

IT IS ORDERED that:

1. plaintiff's motion for summary judgment on its motion for declaratory relief is denied; the Court finds plaintiff has a duty to advance legal fees under the terms of the policy;

2. plaintiff's motion to dismiss defendants' counterclaim for breach of contract is denied;

3. plaintiff's motion to dismiss defendants' counterclaims for unfair trade practices and bad faith is granted;

4. plaintiff's appeal from the Magistrate's order is now moot and said order is of no effect; and

5. defendants' motion for summary judgment on the breach of contract claim is granted.