**FEDERAL DEPOSIT INSURANCE CORPORATION, in its Corporate Capacity**

v.

**Burnice E. BOOTH, et al.**

**Civ. A. No. 92–217.**

United States District Court, M.D. Louisiana.

April 23, 1993.

Victor L. Roy, III, Roy, Kiesel, Aaron & Tucker, Baton Rouge, LA, for plaintiff.

Todd A. Rossi, Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, Louis Jerome Stanley, Tom Fore Phillips, Taylor, Porter, Brooks & Phillips, Baton Rouge, LA, for defendants.

## RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT ON THE ISSUE OF DEFENSE COSTS

POLOZOLA, District Judge.

This matter is before the Court on cross motions for summary judgment filed by St. Paul Insurance Company (St. Paul) and defendants Tyler, Scott, Peak, Simoneaux, Walker, Booth, Parker, Price, Varnado, Coxe, Hughes, Brignac & Smith. The specific issue raised by the motions is whether or not St. Paul has a duty to provide a defense and attorney's fees and costs to the defendants. The Court finds that St. Paul has a duty to contemporaneously reimburse the defendants for attorney's fees and defense costs incurred by the defendants in defending this action.

### I. The Facts

Livingston Bank & Trust was declared insolvent on March 16, 1989. The Federal Deposit Insurance Corporation ("FDIC") filed this suit on March 13, 1992, against various former officers and directors of Livingston Bank & Trust. St. Paul was also named as a defendant pursuant to the Louisiana Direct Action Statute.[1] St. Paul wrote a directors and officers liability policy[2] which was to be effective from January 2, 1983 to January 2, 1986. The policy was purportedly canceled by St. Paul on May 29, 1985, about seven months before its stated expiration date.[3] When Livingston Bank was notified by St. Paul that the policy was being canceled, the bank purchased a 12–month "extension of discovery period," which ran through May 29, 1986.

St. Paul claims that the policy does not afford coverage for the claims the FDIC has

---

1. La.R.S. 22:655.

2. Policy Number 400 GM 7568.

3. This is a contested issue. Defendants contend that the policy was not properly canceled. Therefore, the purported cancellation was ineffective. This issue is irrelevant to the motion before the Court because of the Court's findings herein.

brought against defendants. As a result of its declination of coverage, St. Paul has refused to defend the lawsuit or pay defense costs incurred by the named defendants in defending this case. As a result various defendants have filed third party demands or cross claims against St. Paul seeking a declaration that if FDIC's alleged claims are proven, these claims would be covered under the D & O policy. The defendants also contend that St. Paul has a duty to defend, or, alternatively, to contemporaneously reimburse the defense costs incurred by the defendants.

## II. Coverage During the Policy Period

St. Paul contends that no "claim" was made under the terms of the policy within the policy period. The pertinent portion of the policy is Insuring Agreement III which provides:

### III. Policy Period

This Policy applies to any negligent act, any error, any omission or any breach of duty which occurs:

(1) During the policy period, and then only if claim is made or suit is brought during the policy period. If, during the policy period, the Insured shall have knowledge or become aware of any negligent act, any error, any omission or any breach of duty and shall during the policy period, give written notice thereof to the Company, then such notice shall be considered a claim hereunder. . . .

 Nowhere in the policy is the word "claim" defined. The insurance company cannot avoid its obligations under the policy unless the policy unambiguously excludes any possibility of coverage. This Court finds that the policy does not unambiguously define a claim or exclude coverage herein.

St. Paul relies on *MGIC Indem. Corp. v. Central Bank of Monroe, La.*, 838 F.2d 1382 (5th Cir.1988) to support its contention that an insured is not entitled to recover under a D & O liability policy where: (1) the insured has failed to report a "claim made" to the insurer promptly; and, (2) the insurance policy required such notice as a condition precedent to recovery. However, the Court finds that *MGIC* is not dispositive of the issues involved in this case. *MGIC* does not define when a "claim" is made. In fact, the court expressly stated that when a "claim" is made is determined on a case-by-case basis.[4] *MGIC* also holds that a claim is indisputably made by an outside party filing a suit on a demand which the bank has denied resulting from an act of the officer or director.[5] Such a claim against the insured would indisputably trigger the notice requirement in the policy. *MGIC*, however, fails to hold that a lawsuit is the only means by which a claim may be made under the policy.

Other courts have not limited the manner in which a claim is made under the terms of the policy to the institution of a lawsuit. Courts have allowed a "claim" to be made in correspondence from regulators to the bank's board of directors demanding corrective action[6] and in supervisory correspondence from the Federal Loan Bank Board informing the institution of deficiencies and demanding corrective action.[7] Livingston Bank received such documents from the FDIC. St. Paul clearly knew what was taking place at Livingston Bank. The insurance company monitored the investigatory activities of the FDIC so closely that it requested and received the federal regulatory examination documents and correspondence from the FDIC to the directors and officers from the bank. Furthermore, some evidence supports the conclusion that St. Paul's awareness of the events taking place at the bank caused St. Paul to cancel the policy early.[8]

---

4. *MGIC Indem. Corp. v. Central Bank of Monroe, La.*, 838 F.2d 1382, 1387 (5th Cir.1988).

5. *Id.*

6. *FDIC v. Mijalis*, 800 F.Supp. 397, "Memorandum Ruling" (W.D.La.1992).

7. *Mt. Hawley Ins. Co. v. FSLIC*, 695 F.Supp. 469 (C.D.Cal.1987); See also *Burns v. Int'l Ins. Co.*, 709 F.Supp. 187, 189 (N.D.Cal.1989).

8. On March 15, 1985 in an internal memo, St. Paul discusses and analyzes information it has received over the past few years concerning the bank's financial condition and loan practices. (Record, document no. S000147–148, Exhibit J). By April 1985, St. Paul was increasingly concerned about the federal regulatory criticisms and indicated it wanted to get out of the policy. Record, document no. S000145, Exhibit K: "The company (St. Paul) wants off the D & O . . ."

The policy does not require that the notice be set forth in a letter written and signed by the insured.[9] The insurance company received a substantial amount of written information from the bank indicating that coverage had been triggered under the terms of the policy.

■ The purpose of a notice requirement is to insure that the insurance company knows it may have obligations under its policy as soon as is reasonably possible. Knowledge that claims have been made against its insured is particularly important if the insurance company has a duty to defend or if the company has a contractual right to participate in the defense or settlement of a claim.

■ Considering the facts of this case, Court finds that claims were properly made against the bank in accordance with the terms of the policy at issue in this case. Therefore, St. Paul had notice of those claims within the policy period and prior to the purported cancellation. The Court further finds the policy does not unambiguously exclude coverage on the basis that no claims were made during the policy period. It is clear that all policy provisions which do not unambiguously exclude coverage must be construed in favor of the insured. Thus, St. Paul's argument that claims were not properly made within the meaning of its policy is without merit.

## III. The "Loss" provision of the policy

■ The Court also finds that the "Loss" provision provides coverage for defendants legal fees.[10] Under Condition 1A, a "loss" includes "any amount the Insured is obligated to pay as respects his legal liability, whether actual or asserted," and specifically includes "costs, charges, and expenses incurred in the defense of actions, suits or proceedings and appeals...."[11] The above language is not limited. Thus, the Court finds that the defendants' legal fees are clearly included within the meaning of "loss" as defined by the policy.

## IV. The Duty to Defend

■ The fact that the Court has held that the defendants' defense costs are a loss within the terms of the policy does not necessarily mean that St. Paul has a duty to defend under the facts of this case. Under Louisiana law, the duty to defend arises if there are any facts which if taken as true support a claim for which coverage is not unambiguously excluded.[12] The Court must look to the allegations in the complaint and the provisions of the insurance contract to determine if there is a duty to defend.[13] Where ambiguity exists as to the coverage intended by the terms of an insurance policy or warranted by the pleadings, the policy must be construed against the insurer.[14] However, the district court must first determine what claims are covered under the policy and then examine the allegations in the

---

however, "do not tell the agent about wanting off the D & O."

9. Further support for this interpretation is found in Condition 7 of the policy, which applies to corporate indemnification. That section says "written notice shall be given by or on behalf of the Insured...." This section only requires some form of written notice.

10. St. Paul appears to concede that defense costs are included as a loss under the terms of the policy. Nevertheless, in the interest of clarity the Court makes this specific finding.

11. The exact policy language reads:

B. Under Insuring Agreement IB [Director' and Officers' Liability], **any amount the Insured is obligated to pay as respects his legal liability, whether actual or asserted,** for any negligent act, any error, any omission or any breach of duty, and, subject to the applicable limits and terms of this policy, **shall include** damages, judgments, settlements, costs of investigation (excluding salaries of officers and employees) **and costs, charges and expenses incurred in the defense of actions, suits or proceedings and appeals therefrom.** [emphasis added]

12. *Complaint of Stone Petroleum Corp.*, 961 F.2d 90, 92 (5th Cir.1992).

13. *Alert Centre, Inc. v. Alarm Protection Services, Inc.*, 967 F.2d 161 (5th Cir.1992).

14. *Jensen v. Snellings*, 841 F.2d 600, 612 (5th Cir.1988); *Ada Resources Inc. v. Don Chamblin & Assoc., Inc.*, 361 So.2d 1339, 1343 (La.App.3d Cir.1978).

complaint in light of the policy coverage.[15]

■ The St. Paul policy provides that the company shall not be required to assume the defense of any claim but has a right to participate if it chooses to do so. Condition 5 of the policy provides:

5. Cooperation of Insured

The Company shall not be called upon to assume charge of the settlement or defense of any claim or suit brought or proceeding instituted against the Insured, but the Company shall have the right and shall be given the opportunity to associate with the Insured in the defense and control of any claim, suit or proceeding where the claim or suit involves, or appears reasonably likely to involve, the Company, in which event the Insured and the Company shall cooperate in all things in the defense of such claim, suit or proceeding.

Other courts which have considered such clauses have found this contractual right does not imply a duty to defend.[16] The Fifth Circuit has interpreted the provision as unambiguously excluding a defense obligation under Louisiana law.[17]

This Court agrees that this provision absolves St. Paul of a specific duty to assume the defendants' defense. It is clear that Condition 5 gives St. Paul the opportunity to defend or associate with the defendants chosen counsel if it wishes to do so. St. Paul has chosen neither.

V. Contemporaneous Reimbursement of Defense Costs

■ In choosing not to defend or associate with the defendants' counsel, however, St. Paul is not absolved of its duty to provide contemporaneous reimbursement of the defendant's defense costs. The duty to provide reimbursement for costs as they are incurred is separate from a duty to defend.[18] As noted previously, the Court must look to the terms of the contract in order to determine St. Paul's duties under the policy. Any ambiguity must be resolved in favor of the insured.

■ St. Paul contends that Condition 6 of the policy sets forth the conditions when the company is required to pay defense costs. That section provides:

6. Loss Payable

Recovery under this contract in respect to claim or loss arising out of any occurrences covered hereunder shall not be made unless and until the Insured's liability has either been rendered fixed and certain by final judgment or admitted by the Company in writing; but in no event shall recovery be made hereunder unless proof of claim is made upon the Company within ninety (90) days after final judgment or admission.

It is not the intention of this Policy that it shall operate or be construed as additional insurance. The Company shall not be required to pay any portion of its coverage unless and until the Insured has actually and in fact paid to the claimant or claimants the full limit of its retention. Proof of payment by the Insured of its full liability shall be a condition precedent to any and all liability and claim against the Company under this contract.

Courts which have reviewed D & O policies with identical or similar language have reached different results on the question of whether the insurer has a duty to advance legal fees prior to final disposition of the action.[19] This Court, like the majority of

---

15. *Rhodes v. Chicago Ins. Co., a Div. of Interstate Nat. Corp.*, 719 F.2d 116 (5th Cir.1983).

16. *Kienle v. Flack*, 416 F.2d 693 (9th Cir.1969); *American Casualty Co. of Reading, Pa. v. FDIC*, 677 F.Supp. 600, 605–06 (N.D.Iowa 1987); *City of Peoria v. Underwriters at Lloyd's, London*, 290 F.Supp. 890 (S.D.Ill.1968).

17. *Institute of London Underwriters v. First Horizon Ins. Co.*, 972 F.2d 125 (5th Cir.1992); *Hartford Accident & Indem. Co. v. United Gen. Ins. Co.*, 855 F.2d 228, 231 (5th Cir.1988).

18. *Gon v. First State Ins. Co.*, 871 F.2d 863 (9th Cir.1989); *Nat. Union Fire Ins. of Pittsburgh, Pa. v. Brown*, 787 F.Supp. 1424 (S.D.Fla.1991).

19. Most courts have required the insurer to pay defense costs when they are incurred by the insured. See e.g., *Gon v. First State Ins. Co.*, 871 F.2d 863 (9th Cir.1989); *Little v. MGIC Indem. Corp.*, 836 F.2d 789 (3rd Cir.1987); *Okada v. MGIC Indem. Corp.*, 823 F.2d 276 (9th Cir.1986); *Nat. Union Fire Ins. of Pittsburgh v. Brown*, 787 F.Supp. 1424 (S.D.Fla.1991); *FSLIC v. Burdette*, 718 F.Supp. 649 (E.D.Tenn.1989); *Mt. Hawley*

courts facing this issue, finds that St. Paul is required to pay defense costs when they are incurred by the insured.

In *Okada v. MGIC Indemnity Corp.*,[20] the Court found that the policy in that case defined loss to include the costs of defense of legal actions and under that section, the insurer's duty to pay those costs was not conditioned on the payment of any damages by the directors. The court reasoned that this ensured the directors would not be required to expend their own funds to receive protection under the policy.[21]

This Court finds Condition 6 does not unambiguously negate a duty to pay defense costs as they are incurred. Some policies contain clauses which give the insurer the option but not the obligation to advance defense costs. This policy contains no such clause. In fact, the St. Paul policy contains no references whatsoever to defense costs. The Court finds Section 6 of the policies ambiguous. Therefore, the Court must resolve all ambiguities in favor of the insured. The Court concludes that St. Paul must pay the defendants' legal fees as they are incurred.

Therefore:

IT IS ORDERED that St. Paul Insurance Company's Motion for Summary Judgment on the issue of defense costs be, and is hereby, DENIED.

IT IS FURTHER ORDERED that the motion of the defendants Tyler, Scott, Peak, Simoneaux, Walker, Booth, Parker, Price, Varnado, Coxe, Hughes, Brignac & Smith for

summary judgment on the issue of defense costs be, and is hereby, GRANTED.

---

Ins. Co. v. FSLIC, 695 F.Supp. 469 (C.D.Cal. 1987); *American Casualty Co. of Reading, Pa. v. Bank of Montana System*, 675 F.Supp. 538 (D.Minn.1987); *PepsiCo, Inc. v. Continental Cas. Co.*, 640 F.Supp. 656 (S.D.N.Y.1986).

Some courts did not find a contemporaneous duty. See *Zaborac v. American Cas. Co. of Reading, Pa.*, 663 F.Supp. 330 (C.D.Ill.1987); *Luther v. Fidelity & Deposit Co. of Md.*, 679 F.Supp. 1092 (S.D.Fla.1986); *Enzweiler v. Fidelity & Deposit Co.*, 1986 WL 20444 (E.D.Ky. May 13, 1986). These cases are all distinguishable because the policies contained an "option clause," which gave the insurer the option but not the

obligation to advance defense costs. The policy in this case contains no such clause.

20. 823 F.2d 276 (9th Cir.1986).

21. The *Okada* court also reasoned that 5(a) of the policy which provided "[n]o costs, charges and expenses shall be incurred or settlements made w/o the Insurer's consent which consent shall not be unreasonably w/held," qualified the duty to pay loss contemporaneously by giving the insurer the right of approval over those items subject to a reasonableness limitation. The St. Paul policy contains a similar provision and this agrees with the reasoning in *Okada*.