**U.S. FIRE INSURANCE CO., Plaintiff,**

v.

**BELTMANN NORTH AMERICAN CO., INC. and James J. Cash, Defendants.**

No. 88 C 1697.

United States District Court, N.D. Illinois, E.D.

June 14, 1988.

Kathleen A. McQueeny, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for plaintiff.

William T. Coleman, Susan M. Langlotz, Hedberg, Tobin, Flaherty & Whalen, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

U.S. Fire Insurance Company ("U.S. Fire") seeks a declaratory judgment that an insurance policy it issued to Beltmann North American Co., Inc. ("Beltmann") does not provide coverage for claims made against Beltmann by its ex-employee James Cash ("Cash").[1] U.S. Fire has moved for judgment on the pleadings under Fed.R. Civ.P. ("Rule") 12(c).[2] For the reasons stated in this memorandum opinion and order, decision is deferred to await the parties' supplemental briefing.

### Background

U.S. Fire issued its Commercial Umbrella Policy No. 523–3362366 (the "Policy") to Beltmann, providing coverage for one year beginning August 1, 1984. In January 1986 Cash sued Beltmann (in the "Cash

---

**1.** U.S. Fire originally sued in the Chancery Division of the Circuit Court of Cook County (Case No. 88 CH 706). Beltmann removed the case to this Court because (1) it is not an Illinois citizen, (2) there is complete diversity of citizenship and (3) the amount in controversy exclusive of interest and costs exceeds $10,000.

**2.** Judgment on the pleadings is appropriate when the admitted facts show the movant is entitled to judgment as a matter of law (2A

*Moore's Federal Practice* ¶ 12–15, at 12–106 (2d ed.1987)). Beltmann's Answer admits all factual allegations of the Complaint, denying only the legal conclusions proposed by U.S. Fire. In that posture it seems likely that one party or the other should ultimately qualify for a Rule 12(c) judgment—unless the jurisdictional or prudential problems identified in this opinion get in the way.

Action," Case No. 86 C 674 in this District Court), alleging Beltmann had discharged him July 8, 1985 in retaliation for his refusal to participate in a scheme to defraud the State of Illinois. Cash's complaint sets out three charges in separate counts alleging:

1. retaliatory discharge (a tort claim);

2. breach of a contractual duty to treat employees fairly; and

3. failure to pay back wages and benefits due under the Illinois Wage Payment and Collection Act.

Beltmann tendered defense of the Cash Action to U.S. Fire, which has been defending under a reservation of rights.

U.S. Fire brought this action seeking a declaration that it has (1) no duty to defend the Cash Action and (2) no duty to indemnify Beltmann for any liability ultimately imposed in the Cash Action. Its Complaint asserts three reasons for noncoverage:

1. Cash's claims, as asserted in the Cash Action, do not fall within the Policy definition of either "personal injury" liability or "bodily injury" liability.[3]

2. Even if Cash's claims would otherwise fall within the Policy's coverage, they did not arise from an "occurrence" as defined in the Policy.

3. Even if the first two hurdles were surmounted, Illinois public policy forbids insurance coverage of Beltmann's liability for Cash's claims.

For its part, Beltmann denies each of those contentions and has filed a counterclaim requesting the opposite declarations from those sought by U.S. Fire.

This Court's preliminary review of the submissions made to this point suggests the existence of fundamental issues that have not been, though they need to be, addressed by the litigants. This opinion will identify these issues for them.

*Choice of Law*

■ U.S. Fire is a New York corporation and Beltmann is a Minnesota corporation. Both sides say (though they do not explain their basis for agreement[4]) that the Policy was issued in Minnesota to cover occurrences happening anywhere. It contains no choice of law provision. Cash's claims arose in Illinois out of Beltmann's operations here and are based on Illinois statutory and common law.

In those circumstances it certainly was not obvious that Illinois substantive law necessarily controlled (as U.S. Fire's initial filing had assumed), so this Court requested and has now received from the parties supplemental briefing on the subject. Because that issue can now be resolved, the next few paragraphs do so to allow the parties' further submissions to conform to this ruling.

*Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–1022, 85 L.Ed. 1477 (1941) teaches Illinois choice of law rules apply to this diversity-of-citizenship action. When an insurance contract covers risks in several states and contains no choice of law provision, Illinois courts generally look to the law of the state of the policy's issuance in interpreting the policy (*Thieme v. Union Labor Life Insurance Co.*, 12 Ill.App.2d 110, 112–13, 138 N.E.2d 857, 858–59 (1st Dist.1956)). But when the public policy of Illinois prohibits the enforcement of any contractual term, the very meaning of that concept is that such public policy overrides the contract in that respect. Indeed, *Thieme* itself recognizes that limitation, for the law review article it characterizes as "well-reasoned," and from which it quotes the operative rule derived "from a summary of Illinois conflicts of law cases," says this (*id.*, emphasis added):

**3.** Other Policy coverage extends to "advertising liability" and "property damage" liability, but those coverages clearly do not apply to Cash's claims.

**4.** In its final text paragraph (apart from the attached endorsements), the Policy says it "shall not be valid unless completed by the the attachment hereto of a declarations page counter-

signed by a duly authorized representative of the company." Though U.S. Fire's Complaint includes (as part of its Ex. A) an unsigned counterpart of the declarations page, the "Representative" listed in a typewritten legend on that page is a Minneapolis insurance agent or broker. That may be the source of the parties' conclusion as to Minnesota issuance of the Policy.

When the substantive rights of the parties to a contract are at issue, *and the public policy of Illinois is not involved,* the court will resolve a conflict of laws problem by basing its selection of the applicable law on the intention of the parties, applying that law expressly or impliedly indicated by the parties to be controlling.

Thus, while Minnesota law does control interpretation of the Policy, this Court must apply Illinois law—its public policy—as to the legality of the Policy's purpose.[5] It seems obvious that if Illinois public policy prohibits insurance against liability for Cash's claims, Illinois courts would not allow the parties to evade that policy by contracting for insurance in a state that does allow such coverage.[6] At least when the claim arose in Illinois, its courts would employ local substantive law to determine whether the contract terms would be enforced.[7]

### Subject Matter Jurisdiction

Article III limits this Court's jurisdiction in all events to "Cases" or "Controversies." Because declaratory judgment actions often stray close to (or cross over) that constitutional line, the Declaratory Judgment Act underscores the Article III requirement (*Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 239–40, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937)) by allowing this Court to issue a declaration only "in a case of actual controversy" (28 U.S.C. § 2201[8]).

*Aetna Life, id.* at 241, 57 S.Ct. at 464 prescribes the appropriate test for judicial resolution of a dispute:

It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

See also *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273–74, 61 S.Ct. 510, 512–13, 85 L.Ed. 826 (1941), applying *Aetna Life* in the insurance context.

 Our Court of Appeals' discussion of the "real and substantial controversy" requirement in *Cunningham Brothers, Inc. v. Bail,* 407 F.2d 1165, 1169 (7th Cir. 1969) expanded on *Aetna Life* and *Maryland Casualty.* When an indemnitor seeks a declaration that it is not liable to the indemnitee for a potential liability, the general rule is that there is no case or controversy when the underlying action against the indemnitee has not yet resulted in liability (*id.*). In terms, that rule would equally bar an action by a liability insurer (which is, after all, the classic example of an indemnitor) to obtain a declaration as to its liability. But where as here the insurance policy contains a defense obligation and the insured has called upon the insurer to assume its defense, *Cunningham Brothers, id.* tells us *that* dispute is suffi-

---

5. This outcome resolves the conundrum posed by Beltmann: that applying forum-state law to the Policy would mean the same contract has different meanings in different states. On the contrary, the Policy itself means whatever Minnesota law says it means, regardless of the location of the claim. Then *if* the Policy—as so read—does insure claims such as Cash's, it will be given effect where such a claim arises in a state where such insurance is allowed, and it will not be given effect where such a claim arises in a state prohibiting such insurance. This formulation uses the concept of "where a claim arises" simply as a shorthand expression for the set of Illinois choice of law factors that control the relevant determination—not necessarily as a term of art having the same meaning as it does (for example) in the federal context of 28 U.S.C. § 1391(a) and (b). There is no need to be more precise in this case, however, be-

cause the factors point to Illinois substantive law whatever standard is employed.

6. This should not be misconstrued as a determination that Minnesota law would allow coverage for Cash's claims. That issue need not be reached.

7. Were this a law school examination question rather than a real case, matters would no doubt have been further complicated by Cash's claims having arisen (see n. 5) in another state and by U.S. Fire then suing in Illinois and arguing that Illinois public policy prohibited insurance covering those claims. That would raise interesting full faith and credit questions. Fortunately that added fillip is absent here, so there is no conceptual difficulty in looking to Illinois law.

8. Further citations to Title 28 provisions will simply take the form "Section—."

ciently immediate to allow the court to issue a declaration.

In part the Complaint asks for a declaration as to U.S. Fire's duty to defend. Yet both litigants' memoranda ignore the issue entirely, discussing only the indemnification issue.[9] That silence, coupled with the acknowledgement that U.S. Fire is in fact defending the Cash Action, strongly suggests U.S. Fire has abandoned its request for a declaration as to its duty to defend. If so, there may be no live controversy to bring what remains of the action within this Court's subject matter jurisdiction.

Federal courts must always examine their jurisdiction, even when all parties want the court to act. For that reason, U.S. Fire and Beltmann are ordered to file memoranda addressing:

 1. whether U.S. Fire has abandoned its duty-to-defend claim;[10]

 2. if so, whether this Court has jurisdiction to issue a declaration on the indemnification claim; and

 3. if the duty-to-defend claim has not been abandoned, what arguments U.S. Fire advances to support its request for a declaratory judgment.

Once those filings are submitted,[11] this Court will be in a position to determine whether it may act.

One other related point bears consideration; Even if this Court has jurisdiction, declaratory relief is always a discretionary remedy, and this Court may decline to rule because the controversy is not wholly ripe.[12] Both parties are invited to address the factors they believe this Court should weigh in exercising that discretion.

### Characterizing Cash's Claims

U.S. Fire's Complaint treats the Cash Action as though it sounds solely in tort for retaliatory discharge. Beltmann quite properly denies that. Yet U.S. Fire's memoranda still deal with the entire Cash Action as if that were the only issue. That error needs correction.

Count II of the Cash Action is for breach of contract. It asserts Beltmann breached a contractual commitment to deal fairly with Cash. No opinion is expressed here as to (1) whether such a claim is within the Policy's coverage or (2) whether Illinois public policy would allow insurance for such a claim. What *is* clear is that neither party has spoken to the issues. There are obvious gaps that require briefing:

 1. Does the breach of contract count of the Cash Action fall within one of the coverages provided by the Policy?

---

**9.** Duty to defend and duty to indemnify are governed by very different legal criteria. Although this Court has not attempted to research Minnesota law on the subject, for purely illustrative purposes it may be assumed that of Illinois. In this state the duty to defend is distinct from and broader than the duty to indemnify, extending to claims even potentially within a policy's coverage (e.g., *Conway v. Country Casualty Ins. Co.*, 92 Ill.2d 388, 393, 65 Ill.Dec. 934, 936, 442 N.E.2d 245, 247 (1982)). Thus U.S. Fire's arguments for nonliability do not necessarily address its potential duty to defend.

**10.** In that respect U.S. Fire's memorandum—if it tenders a negative answer—must explain:
 1. the significance of its having voluntarily undertaken the defense of the Cash Action; and
 2. why its memoranda on the current motion to this point have not even spoken to the duty to defend.
On the first issue, the nature and scope of U.S. Fire's reservation of rights in undertaking the defense may of course have some bearing. That document has not been furnished to this Court.

**11.** These matters may perhaps call for factual as well as legal submissions. It appears that the Policy (an umbrella policy) imposes a duty to defend only when (1) a claim is not covered by underlying insurance or (2) all underlying insurance has been exhausted. Nothing before this Court indicates whether either threshold condition is met.

**12.** For example, because Cash may never prevail against Beltmann, it may be reasonably be viewed as a waste of judicial resources to determine now what U.S. Fire's responsibility would be if Cash were to win. On the other side of the coin, even if Cash does prevail, U.S. Fire's liability vel non may well depend on the theory under which he succeeds or on the specific facts adduced in the process. In view of the multiple contingencies involved, it may not be appropriate for this Court to speculate now on the potential outcomes.

2. If so, did that count arise from an "occurrence" as defined for the appropriate coverage? [13]

3. Is there an Illinois public policy prohibiting coverage for that type of claim?

Count III of the Cash Action is for Beltmann's failure to pay back wages allegedly due when Cash was discharged. To say the least, that is far afield from any claim for retaliation. Suffice it to say the parties have provided nothing at all on which this Court could even know whether the questions just asked about the Count II claim are also the right ones to pose as to the Count III claim. A fortiori, this Court has no information from which it could begin to prepare a declaration as to coverage of that latter claim.

### Retaliation Claim

Even as to Count I of the Cash Action the parties' submissions are deficient. Three issues can be dealt with quickly to focus the proceeding.

First, it really does not matter whether a claim for "retaliation" is one charging "discrimination," so the parties' extensive philosophical discussion of the matter is really superfluous. As the Policy defines "personal injury," that term "means injury, such as but not limited to" a long list of causes of action including discrimination. Thus the question is not whether retalia-tion equates directly to discrimination, but rather whether retaliation falls within the class of claims (of which discrimination is an example) that are identified by implication from the specifically listed items.[14] U.S. Fire is free to argue otherwise, but at first blush it seems a retaliatory discharge claim does fall within the broad contours of the class.

Second, Beltmann is simply wrong in contending the Policy's definitions of "occurrence" do not apply to the use of that term in the Policy's coverage declaration. Beltmann takes that position because (1) the term is not capitalized in the section labeled "Coverage" but is capitalized in the "Definitions" section and (2) the definition comes after the use of the term (Beltmann Mem. 5–7). Both arguments are absurd. "Occurrence" is capitalized only once in the entire Policy: in the definition, where it is the first word of a sentence![15] That is hardly mysterious and creates no ambiguity. Similarly, the section of the Policy labeled "Definitions" (Policy Insuring Agreement III) states the meaning of numerous terms already used in the "Coverage" section (Policy Insuring Agreement I). Of course those definitions apply to that most critical section of the Policy.

Third, Beltmann is just as obviously mistaken in arguing an ambiguity is created by the absence of an exclusion for intentional injuries or actual malice in the sec-

---

**13.** There are different definitions of "occurrence" for different Policy coverages:

1. As to bodily injury liability, an "occurrence" is "injurious exposure to conditions which result in Bodily Injury ... neither expected nor intended from the standpoint of the insured." If any count of the Cash Action falls within the coverage for "bodily injury" (which includes mental anguish), that definition would appear to preclude coverage only if the injury (rather than Beltmann's conduct itself) was intended or expected.

2. For purposes of personal injury liability, an "occurrence" excludes "an offense committed with actual malice." Actual malice is not further defined. U.S. Fire R.Mem. 14 seems to equate actual malice with knowingly and intentionally committing a wrongful act, but the term has many meanings in the law. Nothing is offered to suggest U.S. Fire is right or wrong as to its meaning here.

**14.** That, of course, involves the familiar ejusdem generis line of analysis.

**15.** In fact Beltmann's argument is even more untenable than that. Even *within* the definition of "occurrence"—the one place where the word is capitalized as the first word in the sentence ("'Occurrence' means....")—the same word appears later in each of the three definitions of that word, and it is never capitalized there either. Nor is that the only term defined within the Policy and handled in identical fashion (see, e.g., the definition of "operations" and its capitalization only when individually used as the first word in a sentence (Policy Insuring Agreement III.8)). There ought to be *some* limits on what the duty to be an advocate will excuse—perhaps what this Court's former colleague Susan Getzendanner referred to as the "straight face" test: Can the lawyer make the argument with a straight face? On that score Beltmann's counsel gets a failing grade.

tion labeled "Exclusions." *If* the claim does not come within the Policy's coverage because it did not arise from an "occurrence," there is no reason for the Policy's draftsman to exclude it in another section of the Policy. Absence of needless redundancy is not ambiguity.

But enough as to nonissues. Instead the real question in determining whether U.S. Fire is entitled to the declaration it seeks is simply this: To prevail under his Illinois tort claim for retaliatory discharge, will Cash necessarily have to prove either "actual malice" or "expected or intended" injury (depending on the relevant coverage, see n. 13)? If so, a declaration may perhaps issue now. If not, it is most likely premature to rule now in all events. While the briefs are not silent on the subject, clearly the parties have not focused on the central importance of the contours of the tort claim that Cash advances under Illinois law.

As for the insurability argument, it is true that the parties have addressed that topic with greater care. Nevertheless, that issue too rests on what Cash must prove to prevail in his lawsuit. This Court can issue the requested declaration only if Cash has to establish that Beltmann engaged in conduct for which Illinois would not allow it to obtain insurance. Thus the parties must address both the nature of the Cash claim *and* what types of coverage Illinois would forbid.

#### Conclusion

At the threshold, this Court may not act unless it is satisfied that it has jurisdiction. Because it appears subject matter jurisdiction may be lacking, both U.S. Fire and Beltmann [16] are ordered to file memoranda as to this Court's jurisdiction on or before June 28, 1988. Their memoranda should also address the substantive issues identi-

fied in this opinion. Responsive memoranda limited to the substantive issues shall be filed by each party on or before July 8, and this action is then scheduled for a status conference at 9:15 a.m. July 29, 1988.

16. Beltmann invoked this Court's jurisdiction by removing the case. Normally this Court would then require Beltmann to carry the laboring oar. But here it is really U.S. Fire that has created the problem by appearing to abandon its duty-to-defend claim (of course U.S. Fire did not want to be in federal court in the first place, so it can hardly be blamed either!). Under the circumstances, it is only fair to ask both parties to address the issue. If however the litigants would rather return to state court (where no rigorous case or controversy requirement operates), they may simply inform the Court, in which event the action will be remanded because "the case was removed improvidently and without jurisdiction" (Section 1447(c)).