In re **PETTIBONE CORPORATION,**
et al., **Debtor.**

The **OFFICIAL CREDITORS' COMMITTEE OF PRODUCTS LIABILITY AND PERSONAL INJURY CLAIMANTS,**
Plaintiff,

v.

**INTERNATIONAL INSURANCE COMPANY, Defendant.**

Bankruptcy No. 86 B 1563–72.
Adv. No. 89 A 0871.

United States Bankruptcy Court,
N.D. Illinois, E.D.

Nov. 28, 1990.

Fritz K. Huszagh, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for Intern. Ins. Co.

David E. Bennett, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for Official Creditors' Committee of Products Liability and Personal Injury Claimants.

## MEMORANDUM OPINION ON INTERNATIONAL INSURANCE COMPANY'S MOTION TO DISMISS OR IN THE ALTERNATIVE TO ABSTAIN

JACK B. SCHMETTERER, Bankruptcy Judge.

The Defendant International Insurance Company ("International") has moved to dismiss, or alternatively, to abstain from hearing Count I of the Amended Complaint ("Complaint") of the Official Creditors' Committee of Products Liability and Personal Injury Claimants ("Committee"). Count I of the Complaint seeks declaratory relief with regard to whether International has a duty to indemnify and defend under its excess insurance policy issued to Debtor Pettibone Corporation ("Debtor") and other named insureds. Defendant also moves to dismiss Count II. That Count seeks declaratory relief with regard to an alleged violation by International of Debtor's confirmed Plan of Reorganization.

International contends that Count I should be dismissed for lack of subject matter jurisdiction in the absence of an actual controversy between the parties. It also argues that Count II should be dismissed for failure to state a claim upon which relief can be granted. The Motion to dismiss is brought under Rules 12(b)(1) and (6), Fed.R.Civ.P. (Bankr.R. 7012). The alternative motion to abstain as to Count I rests on and 28 U.S.C. § 1334(c)(1) and (2). Following hearing held and argument heard August 23, 1990, and having considered the matters presented thereat and the pleadings, for reasons stated below the Motion to dismiss Count I is granted (and therefore the motion to abstain as to that Count is not reached), but the motion to dismiss Count II is denied.

### Factual Basis for Motion

The following facts appear from the Complaint:

On January 31, 1986, Debtor and other related entities filed voluntary petitions under Chapter 11 of the Bankruptcy Code. Those petitions have been jointly administered. Prior to the bankruptcy filing, various lawsuits were filed against Debtor alleging occurrences which had taken place during the policy period at issue, beginning October 22, 1984 and ending October 22, 1985 (the "policy period"). The claimants in those suits alleged personal injuries and property damage resulting from asserted failure of products manufactured, sold, leased, handled or distributed by Debtor (the "product liability claimants"). Twenty-one claims totalling in excess of $21,000,000 have been filed in pending suits.

At all times mentioned, Debtor maintained primary insurance coverage through a general liability insurance policy, No. BLA 50309, issued by Northumberland General Insurance Company ("Northumberland"). That policy covered product liability claims alleging bodily injury and property damage which occurred during the policy period. The policy provided for a limit of liability of $700,000 per occurrence and $700,000 in the aggregate for the product liability claims. In 1985, Northumberland became insolvent and currently is in insolvency proceedings.

For several policy years including the period at issue, Debtor also maintained excess layers of insurance in amounts and from companies that differed from year to year. In order to reach the coverage issued by its excess carriers for the benefit of product liability claimants, Debtor negotiated and entered into several insurance agreements (the "PL Insurance Agreements"). The PL Insurance Agreements were conditioned on Plan confirmation herein. They provided that each respective insurer (the "PL Insurer") would defend the product liability claims and pay judgments and settlements in its policy year to the limits of the respective policy. On December 9, 1988 this Court confirmed Debtor's Second Amended Consolidated Plan of Reorganization (the "Plan"). All the PL Insurance Agreements were incorporated into and became part of the confirmed Plan.

Article VII, ¶ 7.01(b) of the confirmed Plan provides:

> The Bankruptcy Court shall have exclusive jurisdiction over all Claims arising under the PL Insurance Policies, the PL Insurance Agreements, ... and all Claims or disputes with respect to the proceeds thereof and other amounts payable thereunder. All proceeds and other amounts payable pursuant to each PL Insurance Policy and PL Insurance Agreement shall be paid solely to the PL Trustee for distribution pursuant to this Article VII, and no payment to any other person shall discharge or affect the liability or obligations of any PL Insurer.

The PL Insurance Agreements continued the coverage provided by certain insurance policies which Debtor had maintained prior to its bankruptcy. Among others, Debtor maintained Umbrella Liability Policy No. 6684–1708 (the "Umbrella Policy") issued by Granite State Insurance Company ("Granite"). Under that policy, Granite agreed to indemnify Debtor and other named insureds for all sums in excess of the limits of Debtor's primary insurance policy which each insured became obligated

to pay by reason of liability caused by or arising out of any occurrence. The Umbrella Policy also provided that Granite would indemnify the insureds for expenses incurred in litigation and investigation of occurrences covered by the policy including legal fees and costs. The limits of liability of the Umbrella Policy were $5,000,000 per occurrence and $5,000,000 in the aggregate.

Subsequent to confirmation of the Plan, this Court approved a "Step–Up" Agreement entered into by Granite and Debtor. Under the Step–Up Agreement, Granite agreed to indemnify Debtor for all sums which it became obligated to pay as a result of the claims and their defense up to the $5,000,000 limit of the Umbrella Policy (the "$5,000,000 limit"). Granite is presently defending Debtor in the various law suits for years that its policy covered.

Pursuant to the Plan, the Committee was assigned Debtor's rights under and interests in Excess Insurance Policy No. 522 0440437, which had been issued by International to Debtor and other named insureds (the "Excess Policy"). The Excess Policy provided that International would

> indemnify the insured for that amount of loss which exceeds the amount of loss payable by the underlying policies described in the Declarations. [International's] obligations hereunder shall not exceed the limit of liability stated in Declaration 6.

Declaration 6 provided that the limit of liability was $20,000,000 per occurrence and in the aggregate the amount in excess of the limits described in Declaration 5. Furthermore, the Declarations of the Excess Policy provided that the "underlying policies" consisted of "$5,000,000 each occurrence and in the aggregate (where available) umbrella liability as provided by Granite State." It is undisputed that International's insurance obligations are not triggered under its policy until entry of judgments or settlement totalling the $5,000,000 limit of liability provided by Granite.

The Excess Policy also provided that International would pay for "loss expense" in addition to the limits of liability identified in Declaration 6. "Loss expense" was defined to include "loss expenses and legal expenses incurred by the insured with the consent of the company in the investigation or defense of claims including court costs and interest."

Subsequent to filing of the initial complaint in this action, International participated with Granite in settlement negotiations of an action previously pending in Texas state court, *Reichert v. Pettibone Corp.* As a result of these negotiations, International paid $3,000,000 directly to the *Reichert* plaintiffs in settlement of all liability of Debtor and other named insureds for claims asserted in that action (the "*Reichert* payment").

At this time, twenty-one product liability claims remain pending in various state courts, some of which are the subject of settlement proceedings. Because liability for these claims has not been determined, the $5,000,000 limit under the Umbrella Policy has not been reached.

## DISCUSSION

### A. *Jurisdiction*

■ United States district courts have subject matter jurisdiction over cases under Title 11 and proceedings arising under, arising in, or related to proceedings under Title 11. 28 U.S.C. § 1334(a), (b). Each district court is authorized to refer such proceedings to the bankruptcy judges for the district. 28 U.S.C. § 157(a). The United States District Court for the Northern District of Illinois has made such a referral pursuant to Local Rule 2.33.

■ In a core proceeding that arises in or under Title 11, a bankruptcy judge is empowered to hear and determine the proceeding and issue final orders and judgments. 28 U.S.C. § 157(b)(1). Count I of the Complaint seeks declaratory relief against a PL Insurer with regard to rights under the PL Insurance Agreements. Ordinarily, a trustee or debtor's cause of action for a declaratory judgment under a policy of insurance issued pre-petition to the debtor is a related, but non-core pro-

ceeding. *In re Ramex*, 91 B.R. 313, 315 (E.D.Pa.1988). However, Count I seeks declaratory relief with regard to the PL Insurance Agreements which were negotiated post-petition for the sole purpose of restructuring Debtor's various layers of insurance coverage in order to reach claimants in the bankruptcy proceeding. The coverage provided by the PL Insurance Agreements constitutes a major asset of the estate and as such is the only means whereby an effective administration of Debtor's bankruptcy estate can be accomplished for the benefit of injured claimants. Thus, any action regarding that coverage arises under Title 11 and is a core proceeding. 28 U.S.C. § 157(b)(2)(A). Furthermore, Count II also arises under Title 11 since it seeks declaratory relief on the basis of an alleged violation of the Plan. Both counts arise under the confirmed Plan. This Court reserved jurisdiction to enforce the Plan,[1] and otherwise has statutory authority to enforce it. Thus, core jurisdiction also lies under 28 U.S.C. § 157(b)(2)(A).

### B. *Standards on Motion to Dismiss*

In order for International to prevail on its motion to dismiss, it must clearly appear from the pleadings that the Committee can prove no set of facts in support of its claims which would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Swanson v. Wabash, Inc.*, 577 F.Supp. 1308 (N.D.Ill.1983). The issue is not whether the Committee will ultimately prevail, but whether the Committee has pleaded a cause of action sufficient to entitle it to offer evidence in support of its claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The Court must consider both pleaded facts and reasonable inferences drawn from the pleaded facts, in a light most favorable to the plaintiff when reviewing a defendant's motion to dismiss. *Mescall v. Burrus*, 603 F.2d 1266, 1269 (7th Cir.1979); *Corcoran v. Chicago Park District*, 875 F.2d 609 (7th Cir.1989); *West-*

land *v. Sero of New Haven, Inc.*, 601 F.Supp. 163, 166 (N.D.Ill.1985).

### C. *Count I*

■ International argues that Count I of the Complaint should be dismissed for lack of subject matter jurisdiction because no actual controversy exists between itself and the Committee as required under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

■ The Declaratory Judgment Act provides:

*[i]n a case of actual controversy* within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. 28 U.S.C. § 2201 (emphasis supplied).

Recognizing that under Art. III § 2 of the Constitution the federal judicial power extends only to "cases" or "controversies," Congress confined the declaratory remedy to "cases of actual controversy." *Kunkel v. Continental Casualty Co.*, 866 F.2d 1269, 1273 (10th Cir.1989). Whether to exercise the power to entertain a justiciable declaratory judgment action, however, is a matter committed to the sound discretion of the trial court. *Id.; Employers Insurance v. McGraw–Edison Co.*, 1987 WL 58061, 1987 U.S.Dist. LEXIS 14833 (W.D. Mich. Aug. 8, 1987).

The standard for finding a justiciable "case or controversy" in a declaratory judgment action is that the dispute

must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937).

This standard was further illuminated in the insurance context in *Maryland Casual-*

---

**1.** Article VII, ¶ 7.01(b) of the Plan provides that this Court has "exclusive jurisdiction over all Claims arising under the PL Insurance Policies [and] the PL Insurance Agreements...." Plan, Art. VII, ¶ 7.01(b).

*ty Co. v. Pacific Co.*, 312 U.S. 270, 273–74, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941):

> [T]he question [of justiciability] in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

The Committee here seeks a declaration of rights against International which do not arise until after judgments and settlements have been entered that total Granite's $5,000,000 limit. That has not yet happened and may never occur. International in effect argues that the dispute before this Court is therefore not "of sufficient immediacy or reality to warrant the issuance of a declaratory judgment." This Court reluctantly agrees.

■ An insurance company's duty to pay will not be defined until the adjudication of the underlying action, and therefore an action to obtain a declaration as to an insurer's liability is both premature and barred. *U.S. Fire Ins. Co. v. Beltmann North American Co.*, 703 F.Supp. 681, 683 (N.D. Ill.1988), citing *Cunningham Bros., Inc. v. Bail*, 407 F.2d 1165, 1169 (7th Cir.), *cert. denied*, 395 U.S. 959, 89 S.Ct. 2100, 23 L.Ed.2d 745 (1969); *Zaborac v. American Casualty Co.*, 663 F.Supp. 330, 333 (C.D.Ill. 1987); *Tews Funeral Home, Inc. v. Ohio Casualty Ins.*, 832 F.2d 1037, 1047 (7th Cir.1987), citing *Maryland Casualty Co. v. Chicago and Northwestern Transportation*, 126 Ill.App.3d 150, 466 N.E.2d 1091, 81 Ill.Dec. 289 (1st Dist.1984). International's duty to indemnify has yet to be defined since the underlying product liability claims have been neither settled nor adjudicated to the extent necessary. Thus, the Committee's declaratory judgment action with regard to International's duty to indemnify is premature and fails to plead an actual case or controversy.

■ It is recognized, however, that an insurer's duty to defend is broader than its duty to indemnify. *Tews*, 832 F.2d at 1042. Because the duty to defend is extinguished only when the complaint does not allege or

the case does not contain facts potentially within the policy coverage, it is usually possible to decide whether the duty to defend exists without waiting for the underlying case to be tried. *Murray Ohio Mftring. Co. v. Continental Ins.*, 705 F.Supp. 442, 445 (N.D.Ill.1989) ("[the] duty [to defend] rests on potential coverage of the loss, not actual coverage"). Thus, where the insurance policy contains a defense obligation and "the insured has called upon the insurer to assume its defense," "that dispute is sufficiently immediate to allow the court to issue a declaration." *Beltmann*, 703 F.Supp. at 683–84.

The Committee seeks a declaratory judgment with regard to International's duty to defend, and a dispute over the duty to defend can be justiciable even if the underlying claims have not been determined. However, like its duty to pay, International's duty to defend is contingent upon the occurrence of a future event, namely entry of judgments and settlement that reach the $5,000,000 limit for Granite. The previously cited authority clearly establish that a dispute must be over a present duty to defend in order to be sufficiently immediate so as to constitute an actual controversy despite the unresolved nature of the underlying claims. In contrast, here the Committee is calling for declaratory relief with regard to an asserted future duty to defend.

In *Zaborac*, an insurance policy provided that the insurer had the option, but not the duty, to advance defense costs. *Zaborac*, 663 F.Supp. at 331. The court found that the insured had not presented a justiciable controversy because the extent of the insureds' loss had not been determined in the underlying action, and the insureds were not entitled to a present receipt of the defense costs they had incurred. *Id.* In particular, the *Zaborac* court stated that when an insurance policy contains a duty to defend, there is "a present obligation". However, because that case did not present a current obligation on the part of the insurer to provide defense for the insured, there was "no need to determine coverage at the outset of the [underlying] litigation."

*Id.* at 333. Similarly, the terms of the Excess Policy here make clear that International has no present obligation to defend until the $5,000,000 limit is reached. Indeed, the Committee's prayer for relief tacitly concedes that point. Thus, the Committee fails to present an actual case or controversy with regard either to International's duty to defend or to its duty to indemnify.

The Committee cites certain cases involving asbestos litigation in support of its contention that Count I does present a justiciable controversy. The first of these cases, to which the Committee cites at length, is *ACandS, Inc. v. Aetna Casualty & Surety Co.,* 666 F.2d 819 (3rd Cir.1981). In *ACandS,* two insurance companies refused to indemnify and defend many pending lawsuits in which potential liability was based on exposure to asbestos. The insured responded by seeking a declaration of the insurers' respective obligations.

The *ACandS* court found that the dispute as to coverage was "real and concrete," and in doing so observed that declaratory suits to determine the scope of insurance coverage "have often been brought independently of the underlying claims albeit the exact sums to which the insurer may be liable to indemnify depend on the outcome of the underlying suits." *ACandS,* 666 F.2d at 822–23. In finding that the dispute regarding insurance coverage was justiciable, the court reasoned that:

"[i]t would turn the reality of the claims adjustment process on its head to hinge justiciability of an insurance agreement on the maturation of a suit to a judgment when the overwhelming number of disputes are resolved by settlement. The respective interests and obligations of insured and insurers, when disputed, require determination much in advance of judgment.... To delay for the sake of more concrete development would pre-

vent the litigants from shaping a settlement strategy...." *Id.* at 823.

Thus, the *ACandS* court predicated its finding of an actual controversy upon the realization that an insurer's liability includes not only an obligation to pay judgments against the insured but also an obligation to pay settlement amounts. *Id.*

Other courts have followed the precise reasoning of *ACandS* and recognized that a declaratory judgment plays an important role with regard to an insurer's conduct in settlement proceedings. *See Keene Corp. v. Ins. Co. of America,* 667 F.2d 1034, 1041 (D.C.Cir.1981) ("[f]or each of these [asbestos] suits—past, present and future—the rights and obligations of [insured] and its insurers must be resolved"); *Kunkel v. Continental Casualty Co.,* 866 F.2d 1269, 1271 (10th Cir.1989) (in which the court observed that without a declaration of the limits of the insurer's obligations, settlement of the litigation at issue was a "virtual impossibility"); *Amatex Corp. v. Aetna Casualty & Surety Co.,* 107 B.R. 856 (E.D. Pa.1989) (in which the court found itself "bound to follow" the *ACandS* decision); *Eureka Federal S & L v. American Casualty Co.,* 873 F.2d 229 (9th Cir.1989) ("a settlement cannot be achieved ... without a resolution in this case of the limits of liability coverage"); *Allstate Ins. Co. v. Green,* 825 F.2d 1061, 1064 (6th Cir.1987), quoting *ACandS,* 666 F.2d at 823 ("[t]o delay for the sake of more concrete development would prevent the litigants from shaping a settlement strategy"). Accordingly, those courts also found that an insured's declaratory judgment action in an insurance dispute represented a justiciable controversy. *Id.*

However, a close examination of the *ACandS* line of cases reveals that the dispute in each of those cases involved a present duty to defend on the part of the insurer as opposed to a future and contingent duty to defend, such as the duty at issue here.[2] The Committee cites to

---

2. In addition, the basis for each dispute in the *ACandS* line of cases was the contention that because the underlying claims had not matured into liability, disputes as to coverage were premature and non-justiciable. The contention

was not, as it is here, that because insurance liability limits had not been exhausted, a dispute regarding coverage in excess of those limits was non-justiciable. In *ACandS,* the court specifically found that justiciability did not depend upon

*Keene, Amatex,* and *Green* in support of its contention that a declaration of International's policy obligations presents a justiciable controversy. However, in *Keene* the court concluded that each insurer was liable to the asbestos manufacturer for costs arising from a present duty to defend. *Keene,* 667 F.2d at 1039. Similarly, in *Amatex* the court emphasized that while the duty to indemnify may not arise until ultimate liability has been determined, a present duty to defend arises, as it did under the policy in that case, when a claim is filed that may submit the insurer to liability. *Amatex,* 107 B.R. 856. Finally, in *Green* the court noted that the insurer was defending a tort action under a reservation of rights, pending a judicial determination of whether it had a present duty to defend or indemnify the insureds. *Green,* 825 F.2d at 1062.

In the cases discussed above, because the respective insurer had a present obligation to defend, it followed that the insurer had a present obligation to conduct settlement negotiations. Thus, the *ACandS* court prefaced its remarks on the importance of declaratory relief in settlement proceedings with the following statement:

> "The obligation to defend is a current one as to which the parties are in conflict. It is independent of the facts of the underlying causes and must, by definition, be handled at this time. This court and others have by now well established that a disagreement on the insurer's obligations to defend is a 'case or controversy'." *ACandS,* 666 F.2d at 823.

■ Thus, under *ACandS* and its progeny, a dispute as to current defense obligations by an insurer is of sufficient immediacy to allow this court to issue a declaratory judgment. Those authorities do not apply to this proceeding since the Committee seeks here a declaration as to future duties of International which are contingent upon an event, the meeting of the $5,000,000 limit, which has not and may never take place.

"the maturation of [the underyling] suit." *ACandS,* 666 F.2d at 823. Nor would it here if

This Court has also considered *Flashner Medical Partnership v. Marketing Mgmt.,* 189 Ill.App.3d 45, 136 Ill.Dec. 653, 545 N.E.2d 177 (1st Dist.1989), in which that court focused specifically upon whether a dispute as to the obligations of an excess insurer was justiciable. The court in *Flashner* did find that a declaratory action against an excess insurer constituted an actual controversy even though liability for the underlying claims might be assumed by a liquidation fund rather than by the excess insurer. The liquidation fund had been established as a result of the insolvency of the primary insurer.

However, the *Flashner* court premised its holding upon the observation that "[i]t would be contrary to the general rule that indemnification does not relieve an insurer of its duty to defend ... if the possibility of indemnification by [the liquidation fund of the primary insurer] for defense costs were to render this action premature." *Flashner,* 136 Ill.Dec. at 657, 545 N.E.2d at 181. Again, the court emphasized that because the insured was seeking a declaration of the excess insurer's present duty to defend, a dispute regarding that duty was an actual controversy in need of immediate judicial attention. *Id.* ("there is no dispute ... that plaintiffs have called upon [excess insurer] to provide a defense against the [underlying] claims"). The possibility that the excess policy might never be reached did not prevent the dispute from being justiciable, but only because the excess insurer in that case assertedly had a present duty to defend.

The Committee argues that existence of an actual controversy is evidenced by International's participation in the *Reichert* settlement negotiations and its direct payment to the *Reichert* claimants. However, International's involvement in the *Reichert* matter is not alleged to have given International a present duty either to indemnify or to defend.

The terms of the Excess Policy make clear and the Committee's own prayer for relief tacitly concedes that International

the $5,000,000 limit had been reached in this case.

has no duty to defend or indemnify until after the $5,000,000 limit is reached. The $5,000,000 limit was not alleged to be reached by the *Reichert* payment, nor has plaintiff pleaded that it has been reached.

The Committee's declaratory judgment action fails in Count I to present a justiciable case or controversy in the absence of allegations of a present duty to defend or indemnify on the part of International. Thus, Count I must be dismissed for lack of justiciable case or controversy at this time.

### D. *Count II*

■ International contends that because Count II fails to state a cause of action upon which relief can be granted and fails to present a ripe controversy, Count II should be dismissed under Rule 12(b)(6) F.R.Civ.P. Count II seeks a judgment declaring that International has violated the Plan by failing to make the payment in settlement of the *Reichert* claim to the PL Trustee, as required by the Plan. Count II also seeks judgment declaring that International is obligated to pay to the PL Trustee an amount equal to the amount of the payment made to the *Reichert* claimants plus interest, and that the limits of liability of the Excess Policy will not be reduced by the amount of the *Reichert* payment. Finally, the Complaint prays that the Court grant "such additional relief as it deems just." This Court finds that the Committee's complaint regarding the *Reichert* payment does create a justiciable controversy, and that the Committee has pleaded a cause of action upon which relief can be granted.

First, with regard to the Committee's allegation that the *Reichert* payment violated the terms of the Plan, the Court again refers to Art. VII, ¶ 7.01(b) of the Plan:

The Bankruptcy Court shall have exclusive jurisdiction over all Claims arising under the PL Insurance Policies, the PL Insurance Agreements . . . and all Claims or disputes with respect to the proceeds thereof and other amounts payable thereunder. All proceeds and other amounts payable pursuant to each PL Insurance

Policy and PL Insurance Agreement shall be paid solely to the PL Trustee for distribution pursuant to this Article VII, and no payment to any other person shall discharge or affect the liability or obligations of any PL Insurer.

International is a PL Insurer under the Plan and is listed as such on Schedule II of the Plan. International received notice of the proposed Plan prior to its confirmation and therefore is asserted to be bound by the terms of the Plan as confirmed. Thus, an allegation that International has violated the terms and procedures of the Plan presents grounds upon which relief can be granted since International is allegedly bound by the Plan with regard to claims arising under the PL Insurance Policies.

Furthermore, the Plan provides that this Court maintains exclusive jurisdiction over all claims arising and proceeds paid under the PL Insurance Policies. International's payment to the Reicherts was made in settlement of a claim arising under the PL Insurance Policies. Therefore, International cannot on motion to dismiss establish that neither International nor the *Reichert* payment are subject to the terms of the Plan or the jurisdiction of this Court, or that the *Reichert* payment was made merely as a "simple business decision." This Court has adequate grounds upon which to decide whether the *Reichert* payment violated terms of the Plan and, if so, whether payment to the PL Trustee may be compelled as a direct consequence of the violation.

■ Moreover, International's payment of $3,000,000 to the *Reichert* plaintiffs created a present dispute with regard to the consequences of that payment. Because the $5,000,000 limit has not been reached under Granite's policy, it might be premature to decide, as requested by the Committee, whether International's $20,000,000 policy limit should be declared reduced by the amount of the *Reichert* payment if that were the only issue. However, it is not premature for this Court to determine whether the $3,000,000 *Reichert* payment should be credited toward the $5,000,000

policy obligations of Granite.[3] Such a determination would bring International $3,000,000 closer to its indemnification and defense obligations, and accordingly would likely have an obvious and immediate impact upon the dynamics of current settlement negotiations in a number of the injury claims suits. In this situation views of the *ACandS* court are directly pertinent to support justiciability. *Id.* 666 F.2d at 823, quoted hereinabove. Since Granite currently has a present duty to indemnify and defend the PL Claims, an issue as to whether Granite's policy limits had been reached would constitute a present justiciable controversy if that issue were presented. Whether the *Reichert* payment contributed to the exhaustion of those limits presents a real and present controversy for purposes of declaratory relief, one that has real and present consequences.

Having found that issues as to the effect of the *Reichert* payment upon the Granite policy limit constitutes a justiciable controversy for declaratory judgment purposes, there remains a question of whether Granite is a necessary party to Count III. *See* Rule 19(a) F.R.Civ.P. However, that question has not been briefed and need not be reached in disposing of the instant motion.

## CONCLUSION

Accordingly, International's Motion to Dismiss Count I of the Complaint is granted by separate order. Because Count I is dismissed, there is no need for the Court to reach International's alternative Motion to Abstain. However, International's Motion to Dismiss Count II of the Complaint is denied by the same separate order.

---

**3.** The Committee does not specifically ask for declaratory relief with regard to the effect of the *Reichert* payment upon the Granite policy limits. However, such relief could be considered under the Committee's general prayer that the Court grant additional relief.